Mr. Justice Hag-nek
delivered the opinion of the Court r.
This was an action brought by the administrator of Robert A. Brown, to recover damages in behalf of his wife- and children, resulting from the failure of the defendant, railroad company to provide proper machinery for the conduct of its work.
The action was brought under the statute of 1885, Chap. 126, 23 Stat., 307. The jury returned a verdict for $8,000’ in favor of the plaintiff, and an appeal is taken to the refusal of the court to grant certain instructions offered by the defendant; to its granting others offered in behalf of the plaintiff; and also to rulings of the court during the trial as to the admissibility of evidence. They are all presented in a bill of exceptions. There is no motion for a new trial upon the ground of excessive damages, or because the verdict was not supported by the evidence.
The facts disclosed seem to be these, though of course the partieá vaiy in their version of parts of the transaction.
On the night of the 17th of March, 1887, a long freight, 'train, containing twenty-five cars, arrived at the New Jersey Avenue yard of the Baltimore and Potomac Railroad Company, in Washington, at about 10.30 o’clock. Brown was the principal night inspector at that yard. The engine which had drawn them from Baltimore left the train, and Brown, the plaintiff’s intestate, together with another car-inspector, proceeded in the discharge of their duty to ascertain whether the cars were in proper condition to travel farther. They discovered that the fifth car from the front of the train liad a broken drawhead or bull-nose, as it was-called, and that it was impossible for that car to travel in safety until it was repaired. By that time the shifting engine had been attached to the front of the train, and Brown went to Phillips, the conductor in charge of the engine, and told him he had discovered the defective draw- *289 bead, and suggested he should pull the cars apart and give him entrance to the front end of the injured car ; saying he could repair the injury in a few minutes, but that unless it was “ repaired the whole thing would be shattered to pieces.” The night was stormy and dark, and snow was falling. Phillips thereupon ordered Hillary, o'ne of the brakemen on the engine, to draw the fourth car apart from the fifth, so that Brown might do the work. The order was obeyed and» the cars separated. Brown then went to the front end of the fifth car where he had found the broken draw-head. This was not over 10 or 12 feet from the rear end of the fourth car, which, with the three, front cars, remained attached to the engine. Brown at once pulled out the broken drawhead and began his operations, standing in front of the fifth car with his back to the four cars which had been detached.
He had some conversation with Phillips about pulling apart some other cars ; but Phillips told him that he would not shift any more of the cars that night, as such were his orders from the yard master. Phillips also told him the four cars with the engine would stand where they were until he had finished the repairs. Soon afterwards the engineer informed Phillips he had not sufficient water in the tender. The conductor asked him if lie could draw a load of stock up the road and stop at Sixth street and get water there. The engineer said he thought he could. To do this they proceeded to detach the engine from the four cars to leave them standing where they then were. Phillips then told Teiling, one of the brakemen, to get up and set the brake • on the front car, next to the tender, for the purpose of holding those four cars in the position they then occupied. It was testified' by employees of the company that one brake would have been sufficient, if in good order, to have held the four cars. • To disconnect the cars from the engine the latter backed a little, and there was a slight concussion as it came back against the cars. The connecting pin was *290 drawn out, and the engine moved off. Teiling had endeavored to set the brake on the front ear, which was a stock car loaded with oil, and according' to some of the witnesses, ho seemed to use his very best efforts to force the brake down. Unfortunately it proved to be defective and not sufficient to hold, and the four cars, now released from the restraint of the heavy engine, began at once to move down grade towards Brown, who was standing, with his back towards them, unconscious that the engine had been detached. The bystanders called out to warn him of his peril, but the cars were already upon him, and he was crushed to death.
The plaintiff contends it was culpable negligence on the part of the defendant to have placed in that train a car with an insufficient brake; that this negligence was the cause of the injury, and there was no contributory negligence on the part of the plaintiff. The defendants denied all negligence on their part, and interposed the further defense, that Brown himself was guilty of contributory negligence; first, because being one of the car inspectors on duty that night, he should have discovered the imperfection of the brake; and, further, because he did not exhibit outside of the car he was repairing a blue light, which the rules of the company required should be displayed whenever a person was doing repair work on a car in a train. They further insisted they wore not liable, because the car with the defective brake did not belong to them, but to a different railroad.
We proceed to notice the exceptions in their order.
The first exception taken by the defendant to the admission in evidence of the exemplification of the letters of administration granted to the plaintiff cannot be sustained.Section 2 of the Act of 1885, Chap. 126, expressly declares that the action to recover damages shall be brought in the name of the personal representative of the deceased; and there was no allegation that the exemplification was not in proper form.
*291 The second exception, which was to the refusal of the •court to direct a verdict for the defendant after the close of the plaintiff’s case in chief, was necessarily abandoned when the defendant proceeded to offer evidence in its own behalf.
The third exception was taken to the refusal of the court to allow the defendant to read to the jury three rules from the printed book of the defendant “ for the protection of car inspectors.” They were offered on the theory that the deceased was bound by their provisions; but there was no proof they had ever been brought to his notice. Downs, the chief car inspector and foreman of repairs, testified he had never given Brown the book nor read the rules to him, but that he gave instructions to him verbally. It would have been most improper, under such circumstances, to admit the rules as imputing knowledge of their contents to the deceased. Indeed, they profess on their face to be regulations for the “foremen of car inspectors,” which was the position of the witness Downs, while Brown was a subordinate under him, although he was the leading car inspector at the Jersey Yard on the night of the accident.
The court went further than it was bound to go, when it allowed Rule 34, relating to the placing of blue lights on cars under repairs, to be read; although it was only shown to have been “ printed on the back of the time tables or •schedules which were posted in the office of the car inspectors.” If, as was insisted by the plaintiff’s counsel, this time table was nailed on the wall with the face outwards, of course the rule printed on the back could have afforded no possible information to any one in the office.
The court 'was correct in its refusal to direct a verdict for the defendant at the close of the testimony on both sides, ■which is the subject of the fourth exception. There should be evidence adduced establishing contributory negligence ■on the part of the plaintiff, in relation to which fair-minded men could not draw different inferences, to justify *292 the court, under this defense, to withdraw the facts from the consideration of the jury; and such was not at all the state of case here.
The fifth exception was taken to the' granting by the court of the two following prayers of the plaintiff:
1. “The jury are instructed that the employees of a railroad corporation have a right to expect that the corporation will, as far as possible, provide for their protection in moving trains, sufficient machinery in good order and condition, and that it will exercise reasonable care and caution not to use cars in its trains having defective brakes; if, therefore, the jury believe from the testimon)^ that the brake set by the brakeman Teiling was defective at the time of the accident, and that by the exercise of reasonable care and caution the defendant could have known said brake to be defective, then it is liable, and their verdict must be for the plaintiff; provided they believe from the testimony that the accident was caused by reason of said defective brake.”
2. “The jury are instructed that if they believe from the evidence the brake set by Brakeman Teiling, as detailed in the evidence, would, if then in good order, have prevented the cars from moving, or, at least, would have tended to retard such movement so as to have given sufficient time to notify Brown of his danger and to have enabled him to escape, then if the jury believe from the evidence that the brake was not in good order at the time of the accident, and further that the defendant by the exercise of reasonable care could have known of its defective condition their verdict must be for the plaintiff.”
These instructions, in our opinion, correctly express the law of the present case as to the duty of the defendant to provide proper machinery and appliances in the conduct of its business, and its liability to its employees who may be injured by its failure to comply with this duty. The principle excludes the consideration in such cases of the defense *293 that the imperfection in the machinery was caused by the negligence of a fellow servant in the same employment. The master's obligation to supply efficient agencies for the proper management of his business is implied in the contract with the injured party, and public policy and humanity ¡absolutely require that he shall be held to so reasonable an ■obligation. The neglect of the fellow servant under such circumstances, is held to be the neglect of the master, and he cannot defend himself by attempting to place the blame upon another of his employees.
' This principle is well expressed in the able opinion of Mr. Justice Field in Northern Pacific Railway Company vs. Herbert, 116 U. S., 643. The action in that case was brought by a brakeman employed in the yard of the rail-Toad company, where its cars were switched upon different "tracks and its trains were made up. According to the statement of the learned justice, “It was his duty, among other "things, to set and to loosen the brakes of the cars whenever necessary and whenever ordered to do so by the yardmaster. At the time mentioned, he was ordered to stop with the brakes two cars, which had been switched upon a track in the yard. In obedience to this order lie went upon the rear -car and attempted to set the brake attached to it; but the brake was so badly broken and out of order that it could not be made to work. As soon as he discovered this he stepped on the forward car in order to stop it. The brake on that car was a step-brake, and im order to work it he was obliged to place his foot on the step attached to the car below the top, and this brought his foot and leg between the two cars. This brake was also out of order, and while attempting to set it, his foot being upon the step, the car struck another car on the track and was suddenly stopped. The draw-bar and bumper of the rear car had been pulled out, and for want of them the two cars, when the forward one was suddenly stopped, came violently together, crushing his leg so that amputation, became necessary.” The *294 justice, after stating the law as to exemption of employers-from liability for the negligence of fellow servants, proceeds
“ It is equally well settled, however, that it is the duty of the employer to select and retain servants who are fitted and competent for the service; and to furnish sufficient and safe materials, machinery, or other means by which it is to be performed and to keep them in repair and order. This duty he cannot delegate to a servant so as to exempt himself from liability for injuries caused to another servant by .the omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred so-as to exonerate him from such liability. The servant does not undertake to incur .the risks arising from the want of sufficient and skillful co-laborers or from defective machinery or other instruments with which he is to work. Ilis contract implies that in regard to these matters his employer will make adequate provision that no danger shall ensue to him.” The justice then refers to a large number of cases, particularly to Hough vs. Railroad, 100 U. tí., 213,. and concludes this part of the case in these words: “ According to the authorities cited there can be no question as to-the liability of the railroad company to the plaintiff for the-injuries he sustained. If no one was appointed by the company to look after the condition of the cars, and see that the machinery and appliances used to move and to stop them were kept in repair and good working order, its liability forth e injuries would not be the subject of contention. Its-negligence in that case would have been in the highest degree cul-pable. If, however, one was appointed by it charged with that duty, and the injuries resulted from his negligence-in its performance, the company is liable. Pie was, so far as that duty is concerned, the representative of the company. His negligence was its negligence, and imposed a liability upon it.”
It-is insisted by the defendant’s counsel that the words-"as far as possible,” introduced into the first of the.iiistruc *295 tions under examination, unduly extended the liability of the defendant to provide appropriate machinery, by exacting the use of the best possible appliances, instead of those. ieasonabK good' and safe. We think this is a misunderstanding of the language of the instruction. Its true meaning will be seen by slightly changing the collocation of the members of t-ho sentence, and using the words complained of distributively, so that the sentence may read thus: '“The employees have a right to expect that the corporation will provide for their protection in moving its trains, sufficient .machinery in good condition (as far as possible) and that it will exercise reasonable care and caution (as far as possible), not to use cars on its trains having defective brakes,” etc. Viewed in this, their proper sense, the words complained of .imply rather a limitation or moderation of the rigor of the rule than an addition to its exactions.
A similar criticism of the language of an instruction given by this court in special term in McDade vs. RR. Co. was noticed by the Supreme Court in 135 U. S., 575. The trial justice, defining the obligations of the master in respect to providing proper machinery told the jury he was not a guarantor of its safety, but “ was only bound to use ordinary care and prudence in the selection and arrangement and care thereof, and had a right to use and employ such as the experience of trade and manufacture sanctions as reasonably safe.” The counsel for the railroad objected in the Supreme' Court to this form of expression as erroneous, without authority, and unknown in the judicial writings on the subject; but the Supreme Court affirmed its correctness and declared the addition imposed no additional obligation upon the master, but relaxed the rigor of the rule in its favor.
The principal objection to this instruction and to that embodied in the sixth exception, was based upon the consideration that the car wdth the defective brake did not belong to the defendant, The Baltimore and Potomac Company, but was the property of the Pennsylvania Company, *296 which we- are to consider as a foreign company upon the record before us. The appellant’s counsel adopts the language of the court in Ballou vs. Railroad Company, 54 Wis., 237, that “one company receiving a loaded car from another company is entitled to presume that it had been properly constructed, had passed the inspection of properly skilled persons, and was reasonably fit for the use to which it was applied when received.” This proposition was presented to the trial court by the seventh and eighth prayers of the defendant, incorporated in the eleventh and twelfth exceptions, which were refused by the presiding justice. These prayers are as follows:
“Unless the jury shall be satisfied from the evidence that a defect in the brake, which was set by Teiling on the stock car just before the accident, was the sole cause of the injury to Robert A. Brown, the plaintiff’s intestate, and that said brake was in such defective condition at the time the said stock car was by the defendant put into its train, the plaintiff cannot recover, and the burden of proof is upon the plaintiff to show, by evidence satisfactory to the jury, that said brake was in such defective condition before said car was by the defendant put into the said train.”
“If the jury shall find from the evidence that the injury to Robert A. Brown resulted solely in consequence of some defect in the brake set by Toiling on the open or stock car next to engine and tender, and that the said stock car was not the property of the defendant but belonged to another railroad company, and had been on the same evening and a short time prior to the accident, brought to the defendant’s yard, in Washington, in a freight train, ivith the brake in such defective condition, then the fact (if the jury shall so find the fact) that such injuries did so result, cannot be considered as evidence to support the charge of negligence against the defendant, and the defendant is entitled' to the verdict.”
Some of the cases cited by counsel in support of this *297 ‘contention seem to sustain it, though none go. to the full extent claimed in these prayers; but we are satisfied, after full examination, that the reason of the matter and the ■weight of authority are to the contrary.
All persons must have observed that the great through ■trains, especiallj of freight cars, are composed of cars belonging to different roads; and frequently the proportion of such ■cars belonging to the particular road over which they are passing is very small. They come from all portions of our •country and often from Canada and Mexico. They are transported along each successive road for hire, and only for that consideration. The employees of such road are ■obliged to handle every car in the train in the same manner, without respect to its ownership, and are exposed to the :same dangers from defects of construction or mechanical •appliances that may attend the management of the cars belonging to the road that employs them. It would be most unreasonable and cruel to declare, that while the faithful workman may obtain compensation from a company for. defective arrangement .of its own cars, he would be without redress against the same company if the damaged -car that occasioned the injury happened to belong to another company. The company on whose road the injury occurred, besides being free from all expense of repairs, would, in such case, receive its hire for the transportation, undiminished by any reclamation from its employee or his family for the grossest form of negligence in the construction or repair of the car. Of course it would be impossible to obtain redress from the company owning the car, as it might be separated from the scene of the accident by many intervening roads.
This particular point has recently been carefully considered by the Court of Appeals of'New York, in several cases which commend themselves to us as containing the proper statement of the law.
In Gottlieb vs. Railroad, 100 New York, 466, the action *298 was brought to recover damages for personal injuries received by the plaintiff while in the discharge of his duties as a brakeman on a freight train of the defendant. He had been ordered to couple two cars, which had broken apart in the night time while under way; and he stood in the usual position that brakemen occupy, between the cars, when engaged in this duty. There is always supposed to be sufficient space left between two cars in a train by reason of the projection of the bumpers, to allow a man to stand there without injuiy. It turned out that the two cars were not provided with proper bumpers; those attached consisting only of pieces of plank of insufficient thickness, nailed on the cars, so that there was only a space of about six inches between the cars when the bumpers met. In consequence of this defect the plaintiff, while trying to make the coupling was badly crushed as the cars came together.
The court said : “The defendant was under obligation to its empldyees to exercise reasonable care and diligence in furnishing them safe and suitable implements, cars, and machinery for the discharge of their duties, and upon the assumption that the defendant was responsible for the condition of these cars, as if they were owned by it,there can he but little doubt that the evidence was ample to show that it had failed in its duty to the plaintiff. The defect was an obvious one, easily discoverable by the most ordinary inspection, and it would seem to be the grossest negligence to put such cars into any train, and especially into a train consisting of cars of different guage. But these two cars did not belong to the defendant. They belonged to other companies, and came to it loaded, and it was drawing them over its road to their destination. They were in good repair, and the defects were in their original construction, they being just as they were originally made. The defendant claims that it was bound to receive and transport these cars over its road, and was under no responsibility for any defects in their structure, and that the plaintiff; upon entering *299 into its employment, assumed all risks from such defects.”' The court refers to all the cases on the subject. Among those cited for the railroad were Mackin vs. Railroad Co., 135 Mass., 201; and Ballou vs. Railroad, 54 Wis., 257, and the other cases cited by defendant’s counsel in his argument in this case, while on the other side it cites Jetter vs. Railroad, 2 Abb. Ct. App. Doc., 458 ; Miller vs. Railroad, 99 N. Y., 607, and Jones vs. The Railroad, 28 Hun., 364. In the last case, the plaintiff’s intestate, a brakeman, was attempting to climb upon a freight car, and one of the iron rungs, which was defective, broke and he fell to the ground and was killed; and it was held the defendant was liable,, although the car belonged to another company. The opinion proceeds: “ It will thus be seen that the utterances of judges as to the responsibility of one company for the defective cars of another company drawn over its road are not entirely harmonious, and yet we think all the authorities hold that the compan}' drawing the cars of another company over the road owes, in reference to such cars, some duty to its employees. It is not bound to take such cars if they are known to be defective and unsafe. Even if it is not bound to make tests to discover secret defects, and is not responsible for such defects, it is bound to inspect foreign cars just as it would inspect its own cars. It owes the duty of inspection as master, and is at least responsible for the-consequences of such defects as would be disclosed or discovered by ordinary inspection. When cars come to it which have defects visible or discoverable by ordinary inspection, it must either remedy such defects or refuse to* take such cars — so much at least is due from it to its employees. The employees can no more be said to assume the risks of such defects in foreign cars than in cars belonging-to the company. The rule imposing this responsibility is; not an onerous or inconvenient or impracticable one. It requires, before a train starts, and while it is upon its passage the same inspection and care as to all the cars in the-train.”
*300 In Goodrich vs. N. Y. C. & H. R. Railroad Co., 116 N. Y., 399, decided in 1889, the ruling in 100 N. Y., was •adopted by the court to its full extent. In that case also, the plaintiff, a brakeman in the employ of the defendant, sued to recover damages for injuries received while engaged in coupling cars on its road by reason of the alleged negli.gence of the railroad company. The plaintiff with other workmen of defendant was sent from Albany to Fishkill to take charge of a circus train which was to come upon the defendant’s road from the New England Road. After the circus train had been switched upon defendant’s road, the plaintiff was ordered by the conductor to couple some of the cars of that train to some stationary cars on the same track. It was dark but he had a lantern. When the cars to be coupled were within a few feet of each other he stepped between them, and then discovered the bumper of the moving car was lower than that of the stationary car. He raised the link, thinking he could make it enter the bumper •of the stationary car, but he failed to do so, and his hand 'was caught between the deadwoods (projections on each side of the bumpers) and severely crushed. .The bumper on the moving car hung lower than it was intended to do by reason of the staple in which it played being broken. The particular point now under examination ivas thus .disposed of by the court: “It was decided . in Gottlieb vs. N. Y. L. E. & W. RR. Co., 100 N. Y., 462, that a railroad company is bound to inspect the cars of another company used upon its road, just as it would inspect its own cars; that it •owes this duty as master, and is responsible for the consequences of such defects as could be disclosed or discovered by ordinary inspection; that when cars come in from another road- which have defects visible or discernible by ordinary examination, it must either remedy such defects or refuse to take them.”
The seventh prayer of the defendant is further incorrect, because it limits the liability of the defendant to the sup *301 position that the brake was in a defective condition when put on the train by the defendant; in other words, that if the brake was shown plainly to have become broken while on the trip from Baltimore to Washington, there would be-no-liability.
The prayer of the plaintiff on the subject of damages is-correctly expressed.
The second, third and fourth prayers of the defendant present the proposition that the burden of proof was upon the plaintiff to show that he was not guilty of contributory negligence. This has so often been held to be incorrect that it is needless to do more than say that we affirm the ruling of the justice below in refusing to grant them. No other instruction on the subject of contributory negligence was asked by the defendant.
The thirteenth exception is taken to the charge of the-court, reaching over nearly two printed pages without specifying what portions of the language used was considered incorrect. Many of the statements of the judge therein contained must be admitted to be undoubtedly correct; and when such is seen to be the case a .general objéction to the-entire charge cannot be sustained.
The expression most particularly objected to in the charge is this: “The only question so far as the negligence of the-defendant was concerned was, was the brake defective, out of order, not in reasonable repair; 'not reasonable for the-occasion.” This, in our opinion, was not objectionable. The word “ occasion ” signifies “ necessity or need,” as well as “ a particular time,” but in either sense it was correctly used in the instruction. The brake should not only be suitable for fair weather, but for a storm such as was. prevailing when the deceased met his death. To hold otherwise would be to allow a railroad company to leave passengers and employees without efficient safe-guards against disaster at the very time they are most needed.
The fourteenth exception was taken to a further part of *302 fbe charge, in which the justice told the jury in estimating the amount of damages to take into consideration the age of the deceased, “his health and strength,” * * * “his family and who they were and who they consist of.” It is insisted that there was no evidence as to the “ strength ” of the deceased, and that it was unimportant to a just verdict whether he left many or few children, and whether they were young or old; and that reference to these topics was calculated to excite the sympathies of the jury against the company. But it was proved at the trial that Brown was thiily-four years of age, a competent workman, and in sound health; that he walked right up to the car and caught hold of the bullnose and pulled it out without difficulty; and these facts certainly tended to prove that he was possessed of considerable physical strength. But the expression “ health and strength ” was evidently used by the justice only as an emphatic manner of calling attention to the state of his health; and would have been correct in that sense, as strength does not necessarily mean physical power, but may also imply efficiency, mentally or intellectual^. We cannot think this criticism of the charge was well taken.
The reference to the family of the deceased, and who they consisted of, was entirely proper. The statute itself contains no direct rule by which the jury is to assess damages, the whole question being left to them, subject only to the limitation that the recovery is not to exceed the sum of $10,000. ' It was therefore very proper for the court to say something by way of instruction on this subject; and the justice very naturally turned to other parts of the statute for guidance. Section 3 declares the damages recovered shall not be appropriated to the payment of the debts or liabilities of the deceased, but shall inure to the benefit of his family; and section 1 provides they “shall be assessed with reference to the injury resulting from such act, neglect or default causing death, to the widow and *303 next of kin of such deceased person.” Of course the injury resulting to the beneficiaries indicated would be much less where the deceased was an old man, with no children, and supported by others, than it would be in the case of a young man, with a large number of little children-entirely dependent on him for' food and clothing, and the purpose of the law could be gratified properly by the jury in their verdict, only by keeping in-; mind the condition and needs of the family in whose favor the verdict was sought.
The fifteenth exception was taken to a further part of the court’s charge to the jury, which contains some statements clearly right; and in our judgment nothing that was incorrect. It supplied a sufficient instruction as to the alleged contributory negligence of the deceased, leaving that question to the decision of the jury, who, in our opinion, were fully justified in determining that issue in favor of the plaintiff.

The rulings below are therefore affirmed.