## THOMAS v. DOYLE et al.
### No. 10527.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 23, 1950.

Decided Dec. 14, 1950.

208

Mr. William A. Tinney, Jr., Washington, D. C., with whom Mr. Wesley S. Williams, Washington, D. C., was on the brief, for appellant.

Mr. Joel D. Blackwell, Washington, D. C., with whom Mr. William A. Powell, Washington, D. C., was on the brief, for appellees.

Before WILBUR K. MILLER and FAHY, Circuit Judges, and WILKIN, District Judge (retired), sitting by designation.

FAHY, Circuit Judge.

Mary E. Thomas was a widow. She owned a substantial house in Washington where she lived with her adopted son, James. He was plaintiff below and is the appellant in this court. As the house was rather large, the mother took in roomers. One of the defendants, William E. Doyle, became a roomer. He had a wife, Lillian, to whom he had been married in Philadelphia in 1915. His wife was not with him but she was still living. There had been no divorce or other proceedings affecting their marriage bond. This was the situation in June, 1927.

In that month William E. Doyle and Mary E. Thomas went through a marriage ceremony in Alexandria, Virginia. The certificate of marriage stated on its face that Doyle in applying for the license represented himself as single and as not having been married previously. After the ceremony William and Mary returned to the house she owned and lived as man and wife. That winter Mary, through the medium of a straw man, deeded the house to William as joint tenant with herself, describing him as her husband. In 1942 she died intestate leaving the appellant as her only heir. In that same year William went through another marriage ceremony, this time with Mabel Jones. But Mabel discovered the facts regarding the

marriage to Lillian and that she was living. Mabel secured an annulment by decree of the District Court for the District of Columbia. She surrendered all interest in the real estate. This was in 1948. In the same year Doyle went through another marriage ceremony with his wife Lillian, and had the property, which then stood in his name, conveyed jointly to the two of them. Doyle has lived in the house since 1927 when he first came there as a roomer. Since the death of Mary he has collected the rents, and has expended an undetermined amount with respect to the house.

The appellant filed this action upon being informed by Mabel's annulment proceedings that when Doyle purported to marry his mother he then had a wife living. The complaint alleges in substance the facts above set forth, and seeks a decree transferring the title of the house to himself and for an accounting from William E. Doyle for moneys collected on the ground that Doyle obtained his title through fraud. The wife, who now has a record interest in the house, was made a co-defendant.

The facts as we have set them forth were proved by appellant; but the court, on motion of the defendants, appellees, dismissed the complaint on the ground that the proof failed to make out a case, thus requiring no proof on the part of the defendants.

We think that the evidence we have narrated, unrebutted, established a *prima facie* case that the marriage of Doyle to the appellant's mother was a fraud upon her and that the deed here involved was a direct consequence of that fraud. The fact that the evidence to prove this was circumstantial does not detract from its probative force. Fraud is frequently not susceptible of direct proof because of its clandestine nature. " * * * It is generally established by legitimate inferences arising from circumstantial evidence." Brach v. Moen, 8 Cir., 1929, 35 F.2d 475, 482, citing Mammoth Oil Co. v. United States, 1927, 275 U. S. 13, 48 S.Ct. 1, 72 L.Ed. 137; Connolly v. Gishwiller, 7 Cir., 1947, 162 F.2d 428, 433; Chorost v. Grand Rapids Factory Show Rooms, 3 Cir., 1949, 172 F.2d 327, 329. See, also, Sovereign Pocohontas Co.

v. Bond, 1941, 74 U.S.App.D.C. 175, 120 F. 2d 39.

In the circumstances stated and with nothing appearing to the contrary there is a clear inference that Mary believed William was entitled legally to become her husband and that he was her husband. The deed by which William acquired the property was made about six months·after the marriage ceremony and by its terms William was described as Mary's husband. The logical conclusion from this evidence is that the deed resulted from the purported marriage. It was a direct consequence of their relationship. By the plaintiff's proof there was not only a failure on William's part to make a full disclosure of his true status in this relationship, as was done in Ogden v. McHugh, 167 Mass. 276, 45 N.E. 731; there was also evidence which would, we think, justify the inference that he made untrue statements of fact either in disregard of their truth or with knowledge of their falsity.

█ Accordingly, appellant's mother could have brought suit during her life to set aside the transfer for fraud. Slater v. Ruggles, 1920, 49 U.S.App.D.C. 277, 263 F. 1021; Ramos v. Pacheco, 64 Cal.App.2d 304, 148 P.2d 704. Upon the death of one who has been deprived of real estate by fraud, the right to sue to set aside the conveyance accrues to the person who would take the property upon the grant of relief. Webb v. Janney, 1896, 9 U.S.App.D.C. 41; Bradley v. Davidson, 1918, 47 U.S.App.D.C. 266, 285; Calhoun v. Jacobs, 1944, 79 U.S. App.D.C. 29, 141 F.2d 729; Harding v. Handy, 1826, 11 Wheat. 103, 24 U.S. 103, 6 L.Ed. 429; Allore v. Jewell, 1876, 94 U.S.

506, 24 L.Ed. 260; Varner v. Clark, 8 Cir., 1922, 283 F. 17; Warner v. Flack, 278 Ill. 303, 116 N.E. 197, 2 A.L.R. 423.[1]

█ This right of the heir to sue is not restricted by § 101 of Title 12 of the D.C. Code (1940 ed.),[2] quoted in the margin, which provides that rights of action that had accrued in favor of a deceased person "shall survive in favor of * * * the legal representative of the deceased: * * *." This section has the effect of extending the quality of survival to those actions which did not survive under the common law. It does not preclude an heir from suing upon a cause of action which had always survived.

█ This section, instead, provides an alternate basis for the right of the appellant in the instant situation to bring this action. The term "legal representative" does not possess a fixed and narrow meaning in the law. This court has construed its use in another section of the D.C.Code, § 14—308, to encompass both executors or administrators and heirs when there is no controversy between them. Thompson v. Smith, 1939, 70 App.D.C. 65, 103 F.2d 936, 123 A.L.R. 76; Calhoun v. Jacobs, supra. That Congress did not intend to limit the right to bring an action under § 12—101 only to executors or administrators is also shown by reference to the terminology used in the wrongful death statute, § 16—1202, where such a result was achieved by use of the more restrictive phrase "personal representative." Harris v. Embrey, 1939, 70 App.D.C. 232, 105 F.2d 111; Fleming v. Capital Traction Co., 1913, 40 App.D.C. 489. The Supreme Court has recognized the different scope of the two terms in New

---

1. Kashouty v. Deep, 1942, 75 U.S.App.D. C. 259, 126 F.2d 233, is not to the contrary. The decedent there had died testate with instructions that her executor was to sell her real property and distribute the proceeds, together with her personal property. Under those circumstances, this court held that unless the will was proved invalid it required the presence of the named executor as a plaintiff in the suit.

2. "§ 12—101 [24:31]. *Actions survive in favor of or against representatives of de-*

ceased party—Injury to person or reputation—Exception.

"On the death of any person in whose favor or against whom a right of action may have accrued for any cause prior to his death, said right of action shall survive in favor of or against the legal representative of the deceased: *Provided, however,* That in tort actions, the said right of action shall be limited to damages for physical injury except for pain and suffering resulting therefrom. (As amended June 19, 1948, 62 Stat. 487, ch. 508, § 1.)"

York Mutual Life Ins. Co. v. Armstrong, 1886, 117 U.S. 591, 597, 6 S.Ct. 877, 879, 29 L.Ed. 997, where the Court stated, " * * * The term 'legal representatives' is not necessarily restricted to the personal representatives of one deceased, but is sufficiently broad to cover all persons who, with respect to his property, stand in his place and represent his interests, whether transferred to them by his act or by operation of law." Reference to *Words and Phrases* also discloses the wide gamut of persons encompassed by the term, among the most common of which are "heirs," particularly when realty is involved. 24 *Words and Phrases* pp. 610, 611. From the foregoing it follows that appellant, as the only heir of his mother, is her legal representative within the meaning of § 12—101 for the purpose of this suit.[3]

3. As to the concomitant right of a personal representative, if there be one, to maintain such a suit, see Ramsey v. Curtis,

We do not intimate that any loss must be suffered by innocent third parties who might have relied upon the record title; nor do we pass upon the status of Lillian with respect to the property. These questions should await opportunity for the fuller development of the facts with respect to the principal issue of fraud by William.

■ It was error to dismiss the complaint at the conclusion of appellant's proof. The pleadings were adequate to state a cause of action which had accrued to the mother during her life and which survived in appellant, or could have been amended to do so if any objection to the sufficiency of the pleading had been raised; and the proof adduced, unrebutted, adequately supported such cause of action.

Reversed and remanded.

1950, 86 U.S.App.D.C. 386, 182 F.2d 687.