## UNITED STATES v. E. I. DU PONT DE NEMOURS & CO. et al.
### No. 49 C 1071.

United States District Court,
N. D. Illinois, E. D.
May 29, 1952.

On Objections to Interrogatories
June 6, 1952.

On Motion for Appointment of Guardians
Ad Litem Sept. 23, 1952.

See also 87 F.Supp. 962.

Willis L. Hotchkiss, Chief, Anti-trust Division, Chicago, Ill., Ferris E. Hurd, Pope & Ballard, Chicago, Ill., for General Motors Corp.

Howard Neitzert, Sidley, Austin, Burgess & Smith, Chicago, Ill., for Pierre S. du Pont, Irenee du Pont, Lammot du Pont, Christiana Securities Co., Delaware Realty & Investment Corp., E. I. du Pont de Nemours & Co.

John T. Chadwell, Snyder, Chadwell & Fagerburg, Chicago, Ill., for United States Rubber.

Mark H. Clayton, Moore, Olson & Trexler, Chicago, Ill., for individual class defendants.

Guy A. Gladson, Winston, Strawn, Black & Towner, Chicago, Ill., for Wilmington Trust Co.

LA BUY, District Judge.

It is charged in the complaint that the named defendants and class defendants conspired to restrain and monopolize interstate trade, and that, as part of the alleged conspiracy, it was agreed that the individual defendants and class defendants would acquire, hold and perpetuate control of the corporate defendants (1) by establishing Christiana Securities and Delaware Realty as personal holding companies, maintaining voting control of those companies, and utilizing them to acquire a controlling interest in the stock of the du Pont Company; (2) by causing the du Pont Company to acquire a controlling interest in the stock of General Motors; and (3) by causing the individual and class defendants to acquire a controlling interest in the stock of United States Rubber.

The complaint charges further that the defendants agreed that the individual and class defendants would utilize their alleged control of the du Pont Company, General Motors and United States Rubber to enhance the size, powers and market control of each of these companies at the expense of its competitors and to eliminate competition among these companies.

The government has petitioned for the "issuance of an order to each of the persons named in Exhibit A attached * * * to show cause why the defendants Pierre S. du Pont, Irenee du Pont, and Lammot du Pont named in this complaint individu-ally and as representatives of the defendant class, are not fairly and adequately representative of the several persons named in Exhibit A and why a judgment entered in this cause * * * should not be binding on the several persons named in said Exhibit A,".

Defendants oppose the issuance of such an order and have submitted an order authorizing service of the complaint and other documents upon the persons named in Exhibit A of the Government's petition and providing that by virtue of such service the persons are notified of the pendency of this cause and its trial date, and "that each such person has the right upon timely application and notice to the parties or their attorneys, to request permission to intervene as a party defendant herein"; in all other respects the government's petition should be denied.

The government's petition is premised upon the theory that the individual defendants named and those whom they are alleged to represent constitute a class as defined by Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Since the proposed order submitted for entry provides inferentially that the judgment bind the absent defendants, it follows that the government is proceeding on the theory that these defendants constitute a "true" class having the attributes of such a group. Rule 23(a).

■ Fundamental to the application of the class suit doctrine is the presence of two compelling elements; that is, (1) the nature of the interest possessed by the unnamed members of the class and the identity it bears to the interest possessed by those named members of the class; and (2) the adequacy of the representation of this interest of the unnamed class members by those who are named as representatives of the class.

The government asserts that the interest of the unnamed members of the class of persons is common with the interest possessed by the named individual defendants who represent them in that (1) all of them are members of the du Pont family and are

related by blood or marriage to the defendants Pierre, Lammot and Irenee du Pont, the named class defendants; and (2) all hold either directly or indirectly through personal holding companies or have a beneficial interest in and through trusts established in their favor or otherwise of shares of voting stock of one or more of the defendant corporations, Christiana, Delaware and United States Rubber. It is the position of the government that the key to the issue of control by certain of the defendant corporations lies in the "stockholdings which the individual and class defendants have in the Delaware Realty & Investment Company and Christiana Securities on the one hand and in the United States Rubber on the other, because it is these stockholdings of the individual and class defendants which give those groups the power of control over this gigantic industrial enterprise." (TR. page 6).

██ Clearly, the mere existence of the two characteristics which the government states are common to the class are not alone sufficient to compel a binding judgment on all of them since the alleged violations sought to be enjoined stem from "the conspiratorial agreement" "to acquire and hold the stock in question in order to insure and perpetuate their control" of the du Pont Company and through it the General Motors Corporation and United States Rubber. The main purpose of the anti-trust statutes is to forbid combinations and conspiracies in undue restraint of trade or tending to monopolize it. As in all actions charging conspiracy the unlawful agreement is the proof of the conspiracy. This agreement may be express or implied. Inevitably, it is seldom that this agreement is express and the proof of the combination charged is almost always extracted from the conduct and acts of the parties. Such a charge places upon the government the burden of showing, expressly or inferentially, that the conduct and acts which the defendants committed were done to perpetuate the common design and purpose alleged in this complaint. Without doubt, the guilt of each defendant is only to be shown by his participation in the con-

spiracy. He must be connected with the acts of the alleged conspirators and has a right to know what he or it is alleged to have done which made him a part of the conspiracy. To admit he is a member of the du Pont family and holds certain stock, does not ipso facto establish that he conspired to violate the anti-trust laws. Whether he did so participate is an individual matter of proof and necessarily a personal defense.

In the American Optical case United States v. American Optical Co., D.C., 97 F. Supp. 71, the identities of the persons who conspired and the fact of their participation were matters of record and disclosed, or were readily ascertainable. Also, in the American Optical case the existence of the agreement to rebate resulting in a violation of the anti-trust laws was readily discoverable and participation therein was readily provable by a single act on the part of each member of the class. The conspiracy alleged in the instant case is not so tangible.

██ Inextricably woven into the present consideration is whether the named class members are fairly representative of the interests of those who are not named. This is an essential condition precedent to the existence of the right to defend in a class action. A representative who is sued must have an interest co-extensive and wholly compatible with the interest of those whom he would represent so as to insure fairly the adequate representation of all. In view of what has been said previously, it must necessarily follow that from the nature of the interest brought into issue, the named defendants cannot fairly defend as to each of the class members since the fact of participation in a conspiracy is individual. The charge in the present suit must stand or fall according to the strength or weakness of the case against each of the members of the so-called "class".

The court is of the opinion that there is no class of defendants within the meaning of Rule 23 of the Rules of Civil Procedure so as to render any judgment en-

tered in the present action binding upon the absent members of the du Pont family.

For the above reasons the court denies the petition and motion of the government for the issuance of a Rule to Show Cause. An order has this day been entered in accord therewith.

### On Objections to Interrogatories.

General Motors Corporation has filed objections to certain designated interrogatories propounded by the government. These interrogatories have been classified into four categories and are as follows: (a) those relating to the purchase of tires and tubes for original and replacement purposes by General Motors from United States Rubber and competitors of United States Rubber; (b) those relating to payments made by Ethyl Corporation to General Motors Corporation; (c) those relating to payments made through Managers Securities Company of General Motors; and (d) those relating to payments made through the General Motors Bonus Plan.

■ The information sought under the first category are the total purchases from 1920 to 1948, inclusive, of tires and tubes for original equipment purchased from United States Rubber and competitors of United States Rubber to be shown separately as to purchases by divisions and subsidiaries of General Motors, the number purchased of tires and separately of tubes and the total purchase price less discounts, rebates, special allowances and the like. The same information is requested of purchases for replacement purposes. It is urged by General Motors that the government has obtained some of this information during the Grand Jury proceedings and possesses the total dollar amounts of such sales; that it is not relevant to compel a showing of the number of units purchased as distinguished from dollar cost, or make a separation of purchases in tires and tubes, or a separation of purchases between the various divisions and subsidiaries of General Motors, or a separation of the purchases between original and replacement.

The government admits that United States Rubber has made a tabulation regarding the dollar amount of certain sales to General Motors but that such information does not supply any information "for the vital pre-1934 period", does not give the number of tires and tubes sold, does not show what divisions of General Motors received the tires, does not show whether the dollar sales were gross amounts or net amounts, does not show whether General Motors bought for original equipment or replacement and does not show the purchases General Motors made from competitors of United States Rubber.

Defendants stress the magnitude of the work attached to compiling the requested statistics. This is, of course, a factor to be considered although not determinative if the relevancy of the requested information is clear. Preferential treatment can only be shown by comparisons. It appears to the court that the number, dollar value— gross and net of the tires and tubes purchased whether for original equipment or replacement, by General Motors from United States Rubber and from competitors of United States Rubber is pertinent to the issues of this case. However, the court fails to understand need to separate these statistics into tires and tubes or into divisions or subsidiaries of General Motors. With the above qualification, the objection to these interrogatories is overruled.

■ The information sought relating to Ethyl Corporation for the period 1924 to 1949 are the total dividends General Motors Corporation received on the stock it held therein and the amount received as royalties, fees or like payments arising out of General Motors patents relating to certain anti-knock compounds. The complaint alleges that

"It was further agreed between the two companies (du Pont and General Motors) that when General Motors made discoveries in the chemical field, it would inform du Pont Company of the findings and grant to du Pont Company exclusive development, production and exploitation rights with respect to

such discoveries. It was also understood that if any of said General Motors' discoveries were usable in General Motors operations, du Pont Company would, after their development, make them available to General Motors Corporation for use upon an exclusive or preferential basis * * *".

General Motors did procure certain patents on its discoveries in anti-knock compounds and gave exclusive rights to its manufacture to du Pont Company. Distribution of said compound was through an exclusive distributorship with Standard Oil of New Jersey. Subsequently, the Standard Oil Company discovered a cheaper and safer formula. A new corporation, the Ethyl Corporation was organized and both Standard Oil and General Motors acquired the voting stock equally and both turned over to the new company their patents relating to the use of tetraethyl lead. It was further agreed that the du Pont Company had the exclusive right to produce said improved product.

It is contended that the amounts paid by Ethyl Corporation to this defendant can be of no relevancy to anything alleged in the complaint since the theory of the complaint is not that this defendant General Motors profited by reason of Ethyl Corporation but rather that the du Pont Company profited from its right to manufacture tetraethyl lead.

The government states "During the course of the taking by the defendants of the deposition of Irenee du Pont in this case, considerable testimony was developed both on direct and cross-examination with respect to the share in the overall tetraethyl lead business which du Pont, General Motors and Standard Oil Company each acquired through the various understandings which were entered into between these parties. Interrogatory 4 simply calls for the specific information as to the pecuniary share which General Motors derived out of the tri-party agreements. It should be borne in mind that whatever this pecuniary share was, du Pont Company automatically

had a vested interest in a portion of it by virtue of the size of du Pont's stock interest in General Motors."

The court is of the opinion the information sought is relevant to the case. Underlying the concept of this interrogatory is the extent of participation each of the named defendants maintained in various fields of activity because of agreements among themselves. By virtue of such alleged agreement certain of the defendants were to receive designated benefits. Information relating to such alleged benefits is pertinent.

■ It is requested that with respect to the operation of the Managers Securities Company of General Motors and the General Motors Bonus Plan that there be disclosed the

"dividends or other returns paid to each person on each class of such allocated stock during each year of the period of time after the stock was allocated; and the amount of consideration, whether in cash, shares of General Motors stock, or otherwise paid to each such holder of Class A and B stock upon the liquidation or dissolution of said company * * *"

and as to bonus awards

"State for each year during which a General Motors Bonus plan (other than that of the Managers Securities Company) * * * was in operation.

"The total number of persons receiving cash and/or stock bonus awards, the total amount of cash awarded, total number of shares awarded and kind and the approximate market value of said stock at the time the award was made

and

"the name and official position of each director and officer who received a bonus award, the amount thereof, number of shares of stock and kind of stock and approximate market value, and the annual salary, commission or

other compensation received by such named person

and

"The name and official position of each of the fifty persons receiving the fifty highest bonus awards (excluding the persons named in answer to other interrogatories), the amount thereof, number of shares of stock and kind and approximate market value thereof."

These are presented in furtherance of that portion of the complaint designated "Control over Officers and Directors" wherein it is alleged in general that the defendant individuals or associates of defendant individuals who were officers or directors of du Pont, including the class defendants, have dominated said Finance Committee of General Motors or the Bonus and Salary Committee of the Board of Directors of General Motors, and have determined who among the General Motors executives should receive bonus allocations and the amount each should receive. It is stated that

"The executive personnel of General Motors have known throughout the existence of the bonus plan, that the recipients of cash and stock bonuses and the amount each received was determined by a committee, the majority of which has at all times been composed of du Pont Company directors, officials and employees. As an inevitable and intended consequence of the operation of the bonus plan, General Motors executives have responded readily to the influence and desires of the du Pont Company."

Though General Motors is willing to give the names of those receiving the bonus awards and their positions, it objects to disclosing the amounts thereof or the market value of stock awarded but states it will state whether or not the awards are substantial. Further, as to market value of the stock defendant objects on the ground that is a matter of public record not controlled by the defendant and is as available to the government as to General Motors

and such value is in any event immaterial since "the recipient of the award neither received the stock nor a vested right in it until a later date." It is also contended that these interrogatories seek the disclosure of confidential information.

The court is of the opinion that the information General Motors is willing to supply should be sufficient. Facts relating to interstate commerce are the relevant facts and while certain inter-corporate policies may be pertinent to such inquiry, information as to exact amounts adds nothing of real evidentiary value. Also, objection is sustained to interrogatory 8(c) requesting the names of fifty persons receiving the highest bonus awards.

Counsel are requested to present an appropriate order not inconsistent herewith, within 10 days.

### On Motion for ·Appointment of Guardians ad Litem.

Plaintiff on July 22, 1952 filed a motion to appoint certain defendants in this action as guardians ad litem for their respective minor children who have also been made defendants in this action. This motion was continued generally. On September 19, 1952 plaintiff and certain named adult defendants by their attorneys jointly petitioned the Court (A) to appoint 17 adult defendants as guardians ad litem for the minor defendants named in the petition and (B) to record in the proceedings in this cause that three other adult defendants and a defendant corporation are general guardians under Delaware law of four other named minor defendants. The petition also asks that leave be granted to withdraw the motion of July 22, 1952, which leave is hereby granted.

 An infant party to an action is the ward of the court and it is the court's duty to see that the infant's rights are protected. This is particularly true whenever the property rights of an infant are involved in litigation. It is the duty of the guardian ad litem to examine into the case, to determine what the rights of his ward are and what defense his interest demands, and vigorously to present that de-

fense. It is the special duty of the guardian to submit to the court for its consideration and decision every question involving the rights of the infant which may be affected by the action. It is incumbent upon the court so far as practicable to see that the guardian protects the interests of the minor by filing proper pleadings and preparing and presenting a full defense.

These duties of the Court and of the guardian ad litem in all probability will assume major importance in the disposition of the issues in this action. It is unnecessary for the Court here to review the pleadings. Even in a field characterized by intricate and complex litigation, this case presents issues of outstanding complexity including the formation and operation of an alleged conspiracy of substantial impact on the nation's economy. As the Court earlier pointed out, violation of the anti-trust laws by the minor defendants can only be shown by their participation in the alleged conspiracy. Whether each defendant, including each minor defendant, did so participate is an individual matter of proof and necessarily gives rise to a personal defense. If the Court should hold that the violation of the antitrust laws alleged in the complaint has been proved, then the relief sought by plaintiff unquestionably will affect the property interests of some, if not all, of the minor defendants. The Court is not advised at this time of the precise property interests owned by each minor but it understands that plaintiff has joined them as defendants in part, at least, so that a binding judgment may be entered which will dispose of, alter, or otherwise affect their property rights.

The guardians ad litem suggested in the motion and petition are also defendants. Naturally they will defend as vigorously as possible their own personal positions and property interests. The Court has no doubt that these defendants are estimable persons and, as relatives, would to the extent possible under the circumstances present the defense of the minors and protect their interests. Because of the nature and scope of this litigation, the court is concerned that conflict in interests will develop and that adequate defense and the best interests of the minor defendants require that they have independent representation. Further, in view of the responsibility of the Court to these minors, it would prefer guardians ad litem residents of this jurisdiction who are continually available to the Court. For these reasons the Court denies paragraphs A and B of the petition without reflection on the persons suggested as guardians ad litem therein.

Very careful consideration has been given to the selection of guardians ad litem. It is customary practice to appoint attorneys to serve in this capacity although, of course, there is no statute or rule of law to this effect. This case, however, is one which peculiarly calls for the application of the usual practice. The guardian ad litem should be an attorney, competent and experienced in the field of law peculiar to this case. Counsel for other defendants have pressed for early trial because of the advanced age of important witnesses. The Court has arranged its docket accordingly. Avoidable delay might well prejudice the interests of those defendants and also the minors. It is therefore to the advantage of all that attorneys skilled in this field prepare and present the defense for the minors.

The amendment to the complaint lists the class defendants, including the minors, according to family groups. The Court appoints Andrew J. Dallstream as guardian ad litem for the minor defendants listed under the family of defendant Irenee du Pont, namely:

Thomas Henry May
John Eric May
Crawford Hallock Greenewalt, Jr.
Pierre Samuel du Pont Darden
Irene Sophie du Pont Darden
Philip Goodenow Rust, Jr.
Francis Gurney du Pont Rust
Henry Rust
Richard Cutts Rust
Henry Harper Silliman, Jr.
Doris du Pont Silliman
Eleanor Howland Silliman

Mariana du Pont Silliman
Robert Morris Silliman
Stephanie Sophie du Pont Bredin
Margaretta Starrett Bredin
Robert Barnett Flint, Jr.
Peter Hubbard Flint
Alice Lucile Flint
Henry Alexis Flint
Constance Evelina Flint.

It appoints Howard Ellis as guardian ad litem for the minor defendants listed in the family of defendant Lammot du Pont, namely:

George Phippen Edmonds, Jr.
Andrew Wilson Edmonds
Elise du Pont Faulkner
Emily Morison Faulkner
Charles Stearns Faulkner
Rosemary Faulkner
Henry Belin Faulkner
Andrew Gray Faulkner
Lammot du Pont, III
William Foster du Pont
Pierre Samuel du Pont, IV
Jane de Doliete du Pont
Michele Wainwright du Pont
Edith du Pont Riegel (Jr.)
Richard Eveland Riegel, Jr.
John Ely Riegel
Natalie Margaret Riegel
Katharine du Pont
Reynolds du Pont, Jr.
Thomas Lewars du Pont
David Flett du Pont
Willis Harrington du Pont

It appoints Claude A. Roth as guardian ad litem for the minor defendants listed in the families of William Kemble du Pont, Henry Belin du Pont, Margaretta du Pont Carpenter and Louisa du Pont Copeland, namely:

S. Hallock du Pont, Jr.
William Kemble du Pont
Richard Simmons du Pont
Henry Belin du Pont, III

Edward Bradford du Pont
Margaretta Lammot Kitchell
Nancy Gardiner Kitchell
Carol Victoria Kitchell
Leslie Halsey Kitchell
Robert Ruliph Morgan Carpenter, III
Mary Kaye Carpenter
William Kemble Carpenter
Belle-Morgan Carpenter
Lammot du Pont Copeland, Jr.
Louisa d'Andelot du Pont
Gerret Van Sweringen Copeland

██ The Court is not informed of the conditions and circumstances under which the adult defendants and a defendant corporation became general guardians under Delaware law as referred to in paragraph B of the petition and the Court is not advised as to the duties and obligations of general guardians under Delaware law. The foregoing appointments of guardians ad litem will therefore stand as to the minors referred to in paragraph B subject to the right of any interested party to point out to the Court the necessity of recording such general guardians in the proceedings in this cause.

The Court hopes by the appointment of these three guardians ad litem, members of the bar of this court, that the recent addition of these defendants and others will not necessitate a postponement of the trial, now set for November 18, 1952. If, after a preliminary examination the guardians should conclude that there may be conflicts in interest between any of the minors or that trial would be expedited by the appointment of additional guardians ad litem, the guardians are instructed to so report to the Court on or before October 15, 1952.

Counsel for the Government should present an order not inconsistent with this memorandum within five (5) days.