In re AIR CRASH DISASTER NEAR SAIGON, SOUTH VIETNAM ON APRIL 4, 1975.

Misc. No. 75–0205.

United States District Court, District of Columbia.

April 12, 1979.

Issac N. Groner, Cole & Groner, P. C., Washington, D.C., Oren R. Lewis, Jr., Richard H. Jones, Lewis, Wilson, Lewis & Jones, Ltd., Arlington, Va., J. Vernon Patrick, Jr., Berkowitz, Lefkovzits & Patrick, Birmingham, Ala., for plaintiffs.

Carroll E. Dubuc, Washington, D.C., for Lockheed Aircraft Corp.

William G. Schaffer, James P. Piper, Civ. Div., U. S. Dept. of Justice, Washington, D.C., for the U. S.

## MEMORANDUM

OBERDORFER, District Judge.

There is before this Court all the litigation which has grown out of the 1975 crash near Saigon of a Lockheed-built United States Air Force C–5A transport plane carrying United States military and civilian personnel and 226 Vietnamese orphans. The orphans were aboard the plane pursuant to arrangements made for them by the United States and Friends for All Children ("FFAC"), a Colorado non-profit corporation. During the United States' involvement in Vietnam, FFAC had provided care and shelter for orphans there and had arranged for the adoption of a number of them by foster parents in the United States and elsewhere.

Actions against Lockheed on behalf of Vietnamese orphans who survived the crash and on behalf of estates of those who died were filed against Lockheed in the District Court of the District of Columbia by FFAC as original diversity cases. Actions against Lockheed by surviving United States citizens and on behalf of the estates of deceased ones were filed in or removed to various federal courts around the country. Some were originally filed here; others were transferred by the Multi-District Panel.

The Court assumes, without deciding, that it has diversity jurisdiction of the decedents' and surviving orphans' cases, either pursuant to this Court's alienage jurisdiction, 28 U.S.C. § 1332(a)(2), or the Court's domestic diversity jurisdiction, 28 U.S.C. § 1332(a)(1). A careful determination of the jurisdiction of the Court with respect to each meritorious case must await the outcome of communications by the *guardian ad litem* with the legal guardians of the surviving orphans and the heirs or next of kin of the decedents. At that time the Court will be in a position to act on a complete record, *compare* Addendum to Exhibit J–1, Exhibits to Lockheed's Motion for Summary Judgment in C.A. No. 76–0544, and with the benefit of full briefing by all parties.[1]

Lockheed has claimed over against the United States, which is now a third party defendant in all the cases.

The Court and the parties are proceeding with the administration of these cases on two main tracks. The cases brought by and on behalf of United States citizens have been the principal forum for vigorous discovery, and one of them is scheduled for trial in November, 1979, pursuant to pretrial order entered on January 4, 1979. *Thomas v. Lockheed*, C.A. No. 75–1831. Another case filed on behalf of the estate of Joanna Pray, a deceased Vietnamese, by the same lawyers who represent FFAC, is on the same pretrial schedule as *Thomas* and will be tried in November if *Thomas* is not.

Meanwhile, on the other track, administration of the orphan cases has been impeded by collateral issues relating to the qualification of FFAC as a proper representative of the surviving orphans and the estates of the deceased orphans, and the possible disqualification of the lawyers representing

---

1. The general rule in the case of prosecution of a claim on behalf of an estate by an executor or administrator is that the citizenship of the representative of the estate determines citizenship for diversity purposes. *See Mecom v. Fitzsimmons Drilling Company*, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). This principle suggests that the citizenship of the legal representatives of the estates of the deceased orphans in the present cases should determine diversity. *Compare* Bush v. Carpenter Bros., Inc., *447 F.2d 707 (5th Cir. 1971);* McAlpin v. James McKoane Enterprises, Inc., *395 F.Supp. 937 (N.D.Miss.1977);* Sadler v. New Hanover Memorial Hospital, Inc., *432 F.Supp. 604 (D.C.N.* *C.1977). The minor legal representatives in the present actions, however, appear before the Court by a* guardian ad litem. *The general rule appears to be that in a diversity suit brought by a minor it is the citizenship of the minor and not that of the minor's representative that determines diversity.* See Ziady v. Curley, *396 F.2d 873 (4th Cir. 1969). Some courts, on the other hand, have reached a contrary result, holding the citizenship of the representative determinative.* See e. g., DiStefano v. Lehigh Valley R. R. Co., *258 F.Supp. 721 (E.D.Pa. 1966);* compare Fallat v. Gouran, *220 F.2d 325 (3rd Cir. 1955).*

FFAC.[2] For example, FFAC may have a conflict of interest because of its possible liability to the orphans and the estates on account of its role in arranging what may prove to be unconventional and unsafe transportation for those killed and injured. In addition, the United States and Lockheed took vigorous exception to efforts by FFAC not only to substitute foster parents for FFAC as next friend of surviving children but also to substitute them as clients of FFAC's lawyers. Finally, the Court and the parties have been unable to design a satisfactory solution to the problem growing out of the practical fact that some of the estates represented by FFAC may have no beneficiaries, so that prosecution of some estates' claims might prove to be useless exercises ending with payments by the United States Government and Lockheed that would escheat to some local jurisdiction, after deduction of attorneys fees.[3]

On February 23, 1979,[4] after careful consideration of briefs filed by Charles R. Work, Esq.,[5] as court-appointed *amicus curiae,* responding briefs by the parties and extensive oral argument by *amicus* and counsel, the Court appointed Mr. Work and his law firm as *guardian ad litem* to represent the interests of the surviving orphans and the infant beneficiaries of the estates, at least until the above-mentioned difficulties could be resolved, and, in the interim, to take initiatives under Court supervision to resolve them.[6]

The effect of the February 23, 1979 appointment was to allow FFAC to continue to maintain the actions on behalf of the estates and surviving infants in collaboration with the Court-appointed *guardian ad litem* unless and until FFAC is replaced by the newly-appointed *guardian* or by some other legal representative (in the cases of the estates) or next friend or guardian (in the cases of the surviving infants).[7]

The February 23, 1979, Order also denied Lockheed's motion for summary judgment with respect to the survivors and its renewed motion for summary judgment with respect to the decedents. The thrust of both motions was that, under applicable law, FFAC lacked capacity to bring these lawsuits on behalf of either the surviving orphans or the estates of the deceased ones.

■ With respect to the surviving orphans, Lockheed maintained in support of its motion that FFAC was neither legal guardian of the infants nor appropriate next friend to bring this lawsuit on their behalf because FFAC was not formally appointed and was not entitled to assume its responsibilities by operation of law. *See* Lockheed's Memorandum in Support of its Motion for Summary Judgment, C.A. 76–0544, Sept. 29, 1979. The Court concluded that it was unnecessary to unravel the tangled web of foreign and domestic legal problems spun by Lockheed's motion. *See*

2. Motion by Third-party Defendant, the United States, for Order To Show Cause, August 21, 1978; C.A. 75–874 and 76–544.

3. There remains unresolved the question of whether the Office of Foreign Assets Control, Department of the Treasury, would act to freeze any recovery by Vietnamese citizens pursuant to the Trading with the Enemy Act, as amended, 50 U.S.C. App. § 5. *See* Submission of United States of America on applicability of Trading with the Enemy Act, filed May 4, 1978, Misc. 75–0205: Letter from Stanley L. Sommerfield, Acting Director, Office of Foreign Assets Control, to Ms. Barbara Allen Babcock, Assistant Attorney General.

4. The Court's order of February 23, 1979, was filed in Misc. 75–0205. See Transcript of Proceedings, Friday, March 2, 1979. The Misc. 75–0205 docket has always functioned as the Master Docket in the Saigon Air Crash case, in accordance with Suggested Procedures for Multi-district Litigation, 75 F.R.D. 589 (1977). Any order affecting two or more actions is filed in the Master Docket.

5. Mr. Work is a leader and former President of the District of Columbia Bar.

6. Mr. Work's duties as *guardian* are defined in paragraphs 3 and 7 of the February 23, 1979 Order.

7. The *guardian ad litem,* the adoptive parents or legal representatives proceeding individually are, of course, free to select their own counsel.

Fed.R.Civ.P. 17(c).[8] FFAC had the capacity as a legal person "who has an interest in the welfare of an infant who may have a grievance or a cause of action," to initiate these actions on behalf of the surviving orphans as a "next friend." *Child v. Beame,* 412 F.Supp. 593, 599 (S.D.N.Y. 1976); Fed.R.Civ.P. 17(c).

■ Subsequent argument by Lockheed raised the possibility that FFAC may have a conflict of interest because of liability to the surviving orphans. *See* Lockheed's Reply to FFAC's Opposition to Lockheed's Motion for Summary Judgment, Point IV, C.A. 76–0544, November 20, 1978. In light of this potential conflict and pursuant to its duty to ensure proper representation of infant plaintiffs the Court has appointed Mr. Work and his law firm as *guardian ad litem.* Fed.R.Civ.Proc. 17(c). Mr. Work will be alert to recognize actual and potential conflicts and will manage the notification procedure set out in the Court's Order of February 23, 1979 without displacing FFAC. *See Horacek v. Exon,* 357 F.Supp. 71 (D.Neb.1973); *Noe v. True,* 507 F.2d 9 (6th Cir. 1974); *see also United States v. E. I. DuPont de Nemours & Co.,* 13 F.R.D. 98 (N.D.Ill.1952). The appointment of Mr. Work thus cured for the present any lingering defects in FFAC's capacity to maintain this lawsuit on behalf of surviving orphans alleged in connection with Lockheed's summary judgment motion. Accordingly, Lockheed's motion for summary judgment in the

survivors' cases, C.A. 76–0544, was denied in the Order filed February 23, 1979.

With respect to the estates, Lockheed's motion contended that the District of Columbia law authorizing a "legal representative" to sue on behalf of an estate, D.C. Code § 12–101, is inapplicable to the decedents' cases under choice of law-conflicts of law principles; Lockheed maintained that the capacity of FFAC or any other representative to represent the estates of the deceased orphans is governed by the law of Colorado or Vietnam, neither of which would have permitted FFAC to maintain this action on behalf of the estates. *See* Lockheed's Motion for Reconsideration of its Motion for Summary Judgment, C.A. 75–0874, May 31, 1978. In denying Lockheed's renewed motion for summary judgment with respect to the claims on behalf of the estates the Court has resolved the choice of law question in favor of the law of the District of Columbia, specifically D.C. Code § 12–101 governing the survival of actions.[9]

■ In a Memorandum filed on May 1, 1978, the Court held that while FFAC may not be a perfect legal representative for the estates of deceased orphans, it was the best one before the Court at the time and fell within the broad definition of legal representative as used in D.C.Code § 12–101. Any possible defects in the recognition of FFAC as a legal representative put at issue by the Lockheed motion are also cured for

---

**8.** Rule 17(c) provides, in relevant part, that:

"If an infant or an incompetent person does not have a duly appointed representative he may sue by his next friend or by a *guardian ad litem.* The court shall appoint a *guardian ad litem* for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."

**9.** *See* pp. 527–529, *infra.*

D.C.Code § 12–101 provides, in relevant part, that:

"On the death of a person in whose favor or against whom a right of action has accrued for any cause prior to his death, the right of action survives in favor of or against the legal representative of the deceased."

The term "legal representative" has been held to apply to "any person who, whether by virtue of testamentary act or [by] operation of law, stands in the place of the decedent with respect to his property . . . ." *Strother v. District of Columbia,* 372 A.2d 1291, 1296 (D.C.App. 1977). *And see Thomas v. Doyle,* 88 U.S.App. D.C. 95, 187 F.2d 207 (1951). The term is not restricted to duly appointed personal representatives, *i. e.,* executors or administrators. *Strother v. District of Columbia, id.* FFAC's responsibilities for the transportation arrangements could also affect its capacity as "legal representative".

The District of Columbia Survival Statute is not, by its terms, limited to injuries incurred in the District of Columbia. *Compare* the District of Columbia Wrongful Death Statute, D.C.Code § 16–2701.

the present by the appointment of Mr. Work as *guardian ad litem* to represent the interests of infant beneficiaries, *i. e.,* heirs or next of kin, of the estates of the deceased orphans. Mr. Work and his law firm are the Court-appointed guardians of the minor legal representatives of the deceased orphans, *see Strother v. District of Columbia,* 372 A.2d 1291 (D.C.App.1977), and are entitled to pursue these actions, under the supervision of the Court, pursuant to the authority of Fed.R.Civ.P. 17(c) and D.C. Code § 12–101.[10] Accordingly, Lockheed's renewed motion for summary judgment in the decedents' cases, C.A. 75–0874, was denied in the Order filed February 23, 1979.

The February 23, 1979 Order also indicated the Court's intention to explain its reasons for refusing to displace the law of the forum, the District of Columbia, as the rule of decision in the decedents' cases. The remainder of this Memorandum sets out the Court's reasons for this decision.

In deciding not to displace the law of the forum as furnishing the applicable rule of decision in the decedents' cases the Court has applied the "interest analysis" process used in the District of Columbia to settle choice of law questions.[11] In "interest analysis" the Court must consider whether the public policy of a particular legislature would be furthered, frustrated or irrelevant if applied in the case at bar and will displace the law of the forum only if the policy of the legislature of another forum has a stronger interest.

Precedent offers only limited guidance for interest analysis in the present case because the status of the passengers and the carrier is *sui generis.* The pleadings and undisputed facts show that this crash has put at stake unique policy interests. The victims were civilian orphans, natives of a jurisdiction, the Republic of South Vietnam, which itself perished as a government a few days after the crash. The orphans were being taken to new homes and new parents in other countries on a United States Air Force plane specially detailed by the United States for this mission. It is unnecessary for conflicts of law purposes to resolve the tantalizing legal questions regarding the legal status of the orphans at the time of the crash vis-a-vis natural parent and adoptive parent. They were orphans of the Vietnam War. The United States Government (as distinguished

---

10. Under District of Columbia law, heirs or next of kin are entitled to recognition as legal representatives in a survival action on behalf of a decedent's estate. *See Thomas v. Doyle,* 88 U.S.App.D.C. 95, 187 F.2d 207 (1950); *Strother v. District of Columbia,* 372 A.2d 1291 (D.C. App.1977). Where, as here, there are heirs or next of kin who are themselves minors a *guardian ad litem* is the appropriate instrumentality to protect their interests pending administration of the decedents' estates. Fed.R.Civ.P. 17(c).

11. Whether by virtue of law, *see Semler v. Psychiatric Inst.,* 188 U.S.App.D.C. 41, 45–50, 575 F.2d 922, 926–31 (1978); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 62 S.Ct. 1284, 86 L.Ed. 1757 (1941), or of custom, *see Lee v. Flintkote Company,* 593 F.2d 1275, 1278 n. 14 (D.C.Cir.1979), a federal court exercising diversity jurisdiction in the District of Columbia looks to District of Columbia decisions to provide applicable choice of law.

District of Columbia decisions generally apply an "interest analysis" approach to determine the law applicable in tort cases. *Semler v. Psychiatric Inst.,* 188 U.S.App.D.C. at 43, 575 F.2d at 924. Under this approach, the court attempts to discover and evaluate, for each potential source of law, what interest the legislature of that jurisdiction may have in applying its law to the parties and circumstances in the case. *See Semler v. Psychiatric Inst., id. See generally* Crampton, Currie, Kay, Conflict of Laws: Cases, Comments, Questions (1975) at 206–296. Although "contacts" with a jurisdiction may be relevant to studying the relationship between the circumstances of a lawsuit and the legislative policies of a jurisdiction, these contacts serve only as one means to ascertain the relevance of such policies, and thereby to identify a legislature's interest, if any, in adjudicating the case pursuant to its laws; "contacts" are not ends in themselves. *See also Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense,* 121 U.S.App.D.C. 338, 341, 350 F.2d 468, 471, *cert. den.* 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966); *compare Textile Museum v. Eberstadt & Co., Inc.,* 440 F.Supp. 30, 32 (D.C.D.C.1977).

There is no reason, in the present case, why District of Columbia law regarding survival of actions, including the element of capacity to sue, should not be applied *in toto*: there is no call for *dépaçage. Compare Currie, id.,* at 378–89; note 13, *infra.*

from any State of the United States) carried on that war and ended it for national foreign policy and military purposes. The transportation of the orphans on a United States Air Force C–5A, built by Lockheed, was incident to carrying out those foreign and military policies. If the death and injury suffered by these orphans in the dying days of the Vietnam war was caused by the negligence of the United States or of Lockheed, which built the plane expressly for the United States and to its specifications, that is a matter of far greater interest and concern to the United States than to any State of the United States. It is a "paramount" interest and concern of the United States federal government that its courts provide a just and reasonable resolution of claims such as those on behalf of the estates of the deceased orphans. *Compare United States v. California,* 332 U.S. 19, 40, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947).

■ The District of Columbia law of survival of actions was enacted by Congress pursuant to its constitutional power and responsibility to "exercise exclusive Legislation in all Cases whatsoever, over . . . the Seat of the Government of the United States." U.S.Const. Art. I, § 8, cl. 17.[12]

The pleadings and discovery afford ample basis for the Court to conclude for purposes of this interim and limited ruling that officials acting at the Seat of the Government were the ultimately responsible actors in the chain of circumstances and specific events which ended in the deaths and injuries at issue here. Because of the national interests at stake here, the law of the forum, which is the law enacted by Congress for the Seat of the Government, should be displaced only if some other jurisdiction has an overwhelming policy interest in applying its own law. *See In re Paris Air Crash,* 399 F.Supp. 732, 745 (C.D.Calif.1975). *Compare Currie, supra,* n. 11, at 221–224.

■ Those jurisdictions claimed by Lockheed or FFAC to have a stronger or equal interest so as to be an appropriate source of law for the present cases are: Georgia, the site of the Lockheed plant which built the ill-fated plane for the United States; Colorado, the place of FFAC's incorporation and the source of its letters of administration for the deceased orphans' estates; Virginia, the headquarters of the Departments of Defense and Air Force; and Vietnam, the scene of the crash and the original home of the orphans.[13]

---

12. This constitutional provision represents

"an unqualified grant of permanent legislative power over a selected area set apart for the enduring purposes of the general government, to which the administration of purely local affairs is obviously subordinate and incidental. The District is . . . the capital—the very heart—of the Union itself, to be maintained as the 'permanent' abiding place of all its supreme departments, and within which the immense powers of the general government were destined to be exercised . . . ." *O'Donoghue v. United States,* 289 U.S. 516, 538–39, 53 S.Ct. 740, 746, 77 L.Ed. 1356 (1932).

Pursuant to its constitutional authority Congress has enacted legislation in the District of Columbia governing the survival of causes of action. The District of Columbia Survival Statute, D.C.Code § 12–101, was enacted by Congress and represents a Congressionally determined policy governing survival of actions.

13. California might be thought to have a special interest in this litigation since Lockheed is a California corporation and California has an interest in protecting California residents from

excessive financial burdens. *See In re Paris Air Crash,* 399 F.Supp. at 743. Whatever interest California may have, it is not of sufficient magnitude to displace the Congressionally enacted law of the forum: the District of Columbia law on survival of actions. This must also be Lockheed's position since Lockheed has not argued either in its Motion for Summary Judgment or in its Motion for Reconsideration that the law of California should apply to these actions.

In any event, the only element of California law which could further California's interest in protecting its residents from burdensome judgments is the California law regarding limitation of damages in death cases. *See Hurtado v. Superior Court,* 11 Cal.2d 574, 584, 114 Cal.Rptr. 106, 112, 522 P.2d 666, 672 (1974); *In re Paris Air Crash,* 399 F.Supp. at 744–45. The Court's own research, although not exhaustive, does not indicate that the survival statute passed by Congress would allow a greater recovery against Lockheed than the California survival statute, California Probate Code § 573. Both D.C.Code § 12–101 and California Probate Code § 573

There is no legal or functional basis for any contention that the law and policy of any jurisdiction relating to survival of actions is more appropriate to the decedents' cases than the Congressionally enacted law of the District of Columbia. To recite these alternative sources of law is to expose the relative insignificance of the States' interests compared to that of the United States as embodied in the Acts of Congress relating to the District of Columbia. Neither Colorado, Georgia, nor Virginia has any interest in providing compensation for the decedents' estates since none of the decedents resided in the United States at the time of their deaths, nor do there exist any medical creditors. *Compare* B. Currie, Selected Essays on the Conflict of Laws (1963) at 701–702. With respect to Colorado, suffice it to say that it ill behooves either defendant to seek application of the law of Colorado in light of their contentions about the significance of FFAC's contacts with its wards and beneficiaries; a natural corollary is the relative smallness of Colorado's interest in this lawsuit. The interest claimed for Georgia by FFAC—maintaining Georgia's reputation as a place where safe planes are built—is likewise dwarfed by comparison with the interest of the United States that the rule of decision, including the element of capacity, be the law of the Seat of the Government.[14]

The interest of Vietnam, in contrast, might weigh heavily here if these decedents had not crashed while in the process of permanently emigrating and if the government which might have had an interest had not been conquered and extinguished by another government which apparently has no such interest.[15]

prevent the abatement of a cause of action in favor of (or against) an injured party and provide for its enforcement by (or against) a representative of the deceased. *Compare Grant v. McAuliffe,* 41 Cal.2d 859, 264 P.2d 944 (1954) *with Jones v. Rogers Memorial Hospital,* 143 U.S.App.D.C. 51, 442 F.2d 773 (1971). Both statutes base recovery on the probable future earnings of the deceased. *Compare Strother v. District of Columbia,* 372 A.2d 1291 (1977) *with Hunt v. Authier,* 28 Cal.2d 288, 169 P.2d 913 (1946). California Probate Code § 573 explicitly excludes recovery for pain and suffering. Prior to August 2, 1978, D.C.Code § 12–101 also barred recovery for pain and suffering. District of Columbia law 2–95, effective August 2, 1978, removes this bar and allows recovery for pain and suffering under the D.C. Survival Statute. This amendment to D.C.Code § 12–101 is not applicable to the present causes of action since they accrued before the amendment became effective. Both the District of Columbia and California statutes allow recovery of punitive damages under appropriate circumstances. *See Pease v. Beech Aircraft Corp.,* 38 Cal.3d 450, 113 Cal. Rptr. 416 (1974) and *Gibbs, Etc. v. Investigators of D.C.,* 105 Washington Law Reporter 1 (D.C.App.), January 3, 1977.

14. This is particularly true in light of federal preemption of the field of aviation regulation, *see In re Paris Air Crash,* 399 F.Supp. at 746; *Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400, 403 (Fth Cir. 1974); *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), and the fact that the airplane here was a military airplane used by the United States Air Force. Whatever legitimate interest Georgia may have in discouraging the manufacture of defective airplanes, Georgia's interest is no greater than that of any other State, not to mention Congress, in discouraging the manufacture of such airplanes. No evidence has been advanced in support of any argument that defective airplanes manufactured in Georgia have a greater likelihood of injuring Georgia residents or property than residents or property in any other State, or of doing any injury to Georgia in a *parens patriae* sense.

15. Insofar as present Vietnamese law might allow recovery by those who might have expected maintenance from the decedents if they had lived, that policy is irrelevant where, as here, the decedents are all orphans and were permanently departing for homes and families elsewhere before the accident occurred. Similarly, the interest Vietnam might have in providing recovery for deceased residents so as, for example, to provide not only for the beneficiaries of a decedent's estate, but also to satisfy the claims of possible medical creditors, is largely irrelevant where, as here, the decedents were no longer residents of Vietnam at the time of the accident and the record does not disclose the existence of any medical creditors. Vietnam therefore has no significant interest in applying its law to the claims of the deceased orphans in this case.

There is an additional reason for not applying a Vietnamese rule of decision that would differ significantly from United States law that lies in the nature and function of this Court. As the Court of Appeals for the Fifth Circuit noted in

This is not to suggest that in any other diversity case the rule of decision should be the law of the District of Columbia because the lawsuit has national importance. These orphans were en route to the United States when they were killed and injured. The United States is a party now. These cases were filed in this forum; the Multi-District panel has assigned all the companion cases here. More importantly, the United States had a special role in the design of the plane that crashed, and in the general circumstances and the particular events which culminated in the crash. Neither the United States nor Lockheed may prove to be legally liable for the crash or the resulting damages. But the United States, as a sovereign in the international sense, is best served, and neither any other jurisdiction, nor Lockheed, is measurably disadvantaged, by a decision that the law of the forum, enacted by Congress as the rule of decision for cases in the Seat of Government, should not be displaced.[16] For these reasons the Court so ruled on February 23, 1979.

---

refusing to apply Cambodian law to the claims of two Americans injured in Cambodia:

"We are a Court of the United States, an instrumentality created to effectuate the laws and policies of the United States. We conclude that in this case we have no warrant, legal or moral, to frustrate well established American policies by an application of the local policies of a foreign government." *Challoner v. Day and Zimmerman*, 512 F.2d 77, 82 (5th Cir. 1975).
*Accord In re Paris Air Crash*, 399 F.Supp. at 745.

16. Application of the survival statute enacted by Congress to this action advances the national interest and impairs no interest of Colorado, Virginia, Georgia or Vietnam. This situation is very different from one in which some foreign jurisdiction has a significant interest in the application of its law and the forum state has no such interest. In such circumstances there may be a good reason to apply foreign law, *see, e. g., Tramontana v. S.A. Empresa De Viacao Aerea Rio Grandense*, 350 F.2d at 471, and the Due Process and Full Faith and Credit Clauses are available to enforce such an obligation. *See, e. g., Home Insurance Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930); *see also*

*Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892).

There might also be a Constitutional obligation to apply the law of another State in a second situation that is also distinguishable from the case at bar: *viz.*, where the result otherwise would be unduly disruptive of the national policy of fashioning a uniform system of enforcement of the rights and duties created by the States. *See e. g., Order of United Commercial Travelers v. Wolfe*, 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947); *but compare National Mutual B. & L. Ass'n v. Brahan*, 193 U.S. 635, 24 S.Ct. 532, 48 L.Ed. 823 (1904).

Here, on the other hand, no such imbalance of interests presents itself in the application of District of Columbia law; no Constitutional principle forbids the application of this law to this case. *See Semler v. Psychiatric Inst.*, 188 U.S.App.D.C. at n. 25, 575 F.2d at n. 25; *Alaska Packers Association v. Industrial Accident Commission*, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935). *Compare Home Insurance Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930); *see generally* Currie, *Selected Essays, supra*, at 188–282.