# HUTCHINS v. HUTCHINS.

WITNESSES; CONFIDENTIAL COMMUNICATIONS; PHYSICIANS; WAIVER; PROBATE OF WILL; OBJECTIONS; INCONSISTENT POSITIONS IN JUDICIAL PROCEEDINGS.

1. It is for the court, and not the family physician of a testator, in testifying as to the mental capacity of the latter to make a will, to determine whether or not the facts upon which his opinion is founded are within or without the limitations of sec. 1073 of the D. C. Code (30 Stat. at L. 1358, chap. 854) prohibiting a physician from testifying concerning confidential information acquired while attending a patient in his professional capacity. (The CHIEF JUSTICE dissenting.)

2. Executors offering the will for probate are not legal representatives of the testator within the purview of sec. 1073 of the D. C. Code, permitting a physician to disclose, with the consent of his patient's legal representatives, confidential information acquired in his professional capacity. (The CHIEF JUSTICE dissenting.)

3. Executors, in proceedings for the probate of the will, may urge that a caveator is estopped by his conduct towards the testator to question the latter's mental competency to make the will, where one of the executors is a beneficiary under the will and an heir at law, and appears in the proceeding in his own right as well as in his representative capacity. (The CHIEF JUSTICE dissenting.)

4. A son who had extensive transactions with his father, to his own pecuniary advantage, during the last years of the latter's life, with knowledge of his mental incompetency to transact business,

NOTE.—On competency of attending physician to testify as to capacity of testator in will contest, see note in 32 L.R.A.(N.S.) 72.

cannot challenge the validity of his father's will upon the ground of the testator's mental incapacity, under the rule forbidding a party to maintain an inconsistent position in judicial proceedings. (Citing *Ohio Nat. Bank* v. *Hopkins*, 8 App. D. C. 146; and *Downs* v. *Downs*, 23 App. D. C. 381.)　(The CHIEF JUSTICE dissenting.)

No. 3209.　Submitted February 4, 1919.　Decided March 31, 1919.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia, on verdict declaring invalid a last will and testament and denying probate thereof.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal is from a verdict and judgment declaring invalid the last will and testament of Stilson Hutchins, and denying probate thereof.

The will was executed October 26, 1910. The testator appointed as executors his two sons, Walter S. Hutchins and Lee Hutchins, and Charles L. Frailey.

Appellants Walter S. Hutchins and Charles L. Frailey, hereafter referred to as caveatees, filed their petition for probate of the will and for letters testamentary, to which a caveat was filed by appellee, Lee Hutchins, hereafter referred to as caveator. The following issues were framed by the court to be tried by a jury:

"1. Was the said Stilson Hutchins, at the time of executing said paper writing bearing date October 26, 1910, of sound and disposing mind and capable of executing a valid deed or contract?

"2. Was the execution, by said Stilson Hutchins, of said paper writing bearing date October 26, 1910, procured by the undue influence of any person or persons, exercised over or practised upon the said Stilson Hutchins?

"3. Was the execution, by said Stilson Hutchins, of said paper writing bearing date October 26, 1910, procured by misrepresentations of any person or persons made to the said Stilson Hutchins?"

The jury, by their verdict, answered each of the issues in the negative. The caveator is not here by way of cross appeal; hence, our inquiry is limited to the assignments of error affecting the verdict and judgment on the single issue of mental incapacity.

*Mr. Henry E. Davis* and *Mr. C. H. Merillat,* for the appellants, in their brief cited:

*Amn. Sec. & T. Co.* v. *Rudolph,* 38 App. D. C. 32; *Anon.* 59 N. Y. 313; *Auld* v. *Cathro,* 32 L.R.A. (N.S.) 72; *Bank* v. *Hopkins,* 8 App. D. C. 146; *Bailey* v. *Kilburn,* 10 Met. 176; *Bates* v. *Norcross,* 17 Pick. 14; *Beil* v. *Sup. Lodge,* 80 N. Y. Supp 751; *Beyer* v. *LeFevre,* 186 U. S. 125; *Bd. Comrs.* v. *Society for Savings,* 90 Fed. 223; Bigelow, Estoppel, pp. 6, 12, 91; *Bigelow* v. *Old Dom. C. Co.* 225 U. S. 111; *Brackney* v. *Fogle,* 156 Ind. 535; *Brewer* v. *Press Pub. Co.* 20 Misc. 509; *Bunker Hill Co.* v. *United States,* 226 U. S. 548; *Burlen* v. *Shannon,* 99 Mass. 202; *Caldwell* v. *Augur,* 4 Minn. 156; *Carmody* v. *Cap. Trac. Co.* 43 App. D. C. 245; *Carr* v. *West End R. Co.* 163 Mass. 360; *Case* v. *Benedict,* 9 Cush. 540; Cent. Dig. Stat. sec. 235; *Clifford* v. *Denver Co.* 188 N. Y. 349; *Cline* v. *Wixson,* 128 Mich. 255; *Coleman* v. *Pearce,* 26 Minn. 123; 3 C. J. p. 901; *Crocker* v. *Franklin Co.* 1 Story, 169; *Cuttle* v. *Brockway,* 32 Pa. 45; *Daniels* v. *Tearney,* 102 U. S. 415; *Davis* v. *Sup. Lodge,* 165 N. Y. 159; *Davis* v. *Wakelee,* 156 U. S. 680; *Dean* v. *Crall,* 98 Mich. 594; Dec. Dig. Stats. sec. 162; *Deery* v. *Cray,* 5 Wall. 795; *Denning* v. *Butcher,* 91 Iowa, 425; *Dolson* v. *DeGanahl,* 70 Tex. 620; *Downs* v. *Downs,* 23 App. D. C. 381; *Dredging Co.* v. *Heldmeier,* 111 Fed. 123; *Duchess of Kingston's Case,* 2 Smith, Lead Cas.; *Eastor* v. *Aspinwall,* 19 N. Y. 119; Endlich, Inter. Statutes, sec. 223; 3 Enc. Pl. & Pr. p. 455; *Ewing* v. *Bass,* 149 Ind. 1; *Ex parte Chateaugay Co.* 128 U. S. 544; *Exp. Crow Dog,* 109 U. S. 556; Fed. Stats. Anno. sec. 142; *Ferguson* v. *Landram,* 5 Bush, 230; *First Nat. Bank* v. *Weidenbeck,* 23 C. C. A. 136; *Re Flint,* 100 Cal. 252; *Fogler* v. *Clark,* 80 Me. 241; *Folger* v. *Palmer,* 35

La. Ann. 743; *Fraser v. Jemison,* 42 Mich. 206; *Gilchrist* v. *Helena Co.* 46 Fed. 593; *Gilmer* v. *Higley,* 110 U. S. 47; Greenl. Ev. secs. 22, 27, 534, 544; *Hayes* v. *Va. Prot. Asso.* 76 Va. 225; *Hamilton* v. *Zimmerman,* 5 Sneed. 39; *Hanson* v. *Buckner,* 4 Dana, 251; *Heaston* v. *Krieg,* 167 Ind. 101; *Heseman* v. *Vogt,* 181 Ill. 400; *Heuston* v. *Simpson,* 115 Ind. 62; *Hill* v. *Farmers' Bank,* 97 U. S. 450; *Hill* v. *Hill,* 53 Vt. 578; *Holten* v. *Holten,* 5 N. Y. Week. Dig. 14; *Horn* v. *Cole,* 51 N. H. 287; *Hoyt* v. *Hoyt,* 112 N. Y. 493; *Re Hunt,* 122 Wis. 400; *Hume* v. *Bowie,* 148 U. S. 245; *Johnson* v. *United States,* 38 App. D. C. 347; Jones, Ev. secs. 371, 391; *Lake Roland Co.* v. *Weir,* 86 Md. 273; *Laughlin* v. *Mitchell,* 121 U. S. 411; *Love* v. *Tomlinson,* 1 Colo. App. 516; *Malony* v. *Adsit,* 175 U. S. 281; *Masonic Asso.* v. *Beck,* 77 Ind. 203; *Mason* v. *Dirk Lum. Co.* 94 Ark. 107; *May* v. *New Amsterdam Co.* 40 App. D. C. 249; *McCarthy* v. *Lavasche,* 89 Ill. 270; *McGoon* v. *Scales,* 9 Wall. 23; *MacDonald* v. *Garrison,* 2 Hilt. 510; *McIntyre* v. *Modern Workmen,* 200 Fed. 1; *Mead* v. *Keeler,* 24 Barb. 25; *Mexia* v. *Oliver,* 148 U. S. 664; *Miller* v. *Springer,* 70 Pa. 269; *Millegan* v. *McLaughlin,* 142 N. W. 675; *Morris* v. *Wheat,* 8 App. D. C. 379; *Morris* v. *Morris,* 119 Ind. 341; *Mut. L. I. Co.* v. *Harris,* 97 U. S. 331; *O'Hagan* v. *Dillon,* 76 N. Y. 170; *Re Peaslee,* 73 Hun, 113; *Petri* v. *Creelman Co.* 199 U. S. 487; *Petty* v. *Brunswick Co.* 109 Ga. 666; *Phillips* v. *Marblehead,* 148 Mass. 326; Pom. Eq. Jur. sec. 802; *Pond* v. *Pond,* 79 Vt. 352; *Potter* v. *Leeds,* 1 Pick. 309; *Reeve* v. *Dennett,* 141 Mass. 207; *Renihan* v. *Dennin,* 103 N. Y. 573; *Rice* v. *Rock Island Co.* 21 Ill. 93; *Rogers* v. *King,* 66 Barb. 495; *Rodgers* v. *United States,* 185 U. S. 83; *Roney* v. *United States,* 43 App. D. C. 533; *Rymer* v. *Luzerne,* 12 L.R.A. 192; *Smart* v. *Kansas City,* 14 L.R.A.(N.S.) 565; *State* v. *Weiskittle,* 61 Md. 48; *Stockton Bank* v. *Staples,* 98 Cal. 189; *Stows* v. *Scongale,* 48 Mich. 395; *Sullivan* v. *Colby,* 71 Fed. 464; *Throckmorton* v. *Holt,* 180 U. S. 552; *Towles* v. *McCurdy,* 163 Ind. 12; *Utermehle* v. *Norment,* 22 App. D. C. 31; *United States* v. *One Case,* 1 Paine, C. C. 400; *United States* v. *Morse,* 218 U. S. 508; *United States* v. *Gear,* 3 How. 120; *United States* v. *Nix,*

189 U. S. 199; *United States* v. *Trans. Miss. F. Asso.* 53 Fed. 440; *Van Rensselaer* v. *Kearney,* 11 How. 297; *Vermont Farm Co.* v. *Batchelder,* 68 Vt. 430; *Watkins* v. *Nat. Bank,* 5 Kan. 254; *Washington* v. *Miller,* 235 U. S. 422; *Watterson* v. *Lyons,* 77 Tenn. 566; *Weng You* v. *United States,* 181 Fed. 313; *Wheelock* v. *Kost,* 77 Ill. 296; *Wood* v. *Purnell,* 51 Me. 52; *Worrall* v. *Parmelee,* 1 N. Y. 519; *Yore* v. *San Fran,* 108 Cal. 431.

*Mr. William G. Johnson, Mr. J. J. Darlington, Mr. Frank J. Hogan,* and *Mr. Myer Cohen,* for the appellee, in their brief cited:

*Bank* v. *Hopkins,* 8 App. D. C. 146; *Bigelow* v. *Old Dominion Copper Co.* 225 U. S. 111; *Bloomfield* v. *Charter Oak Bank,* 121 U. S. 121; *Bunker Hill, etc. Min. Co.* v. *United States,* 226 U. S. 548; *Carmody* v. *Capital Traction Co.* 43 App. D. C. 245; *Daniels* v. *Tearney,* 102 U. S. 415; *Davis* v. *Wakelee,* 156 U. S. 680; *Deery* v. *Cray,* 5 Wall. 795; *Downs* v. *Downs,* 23 App. D. C. 533; *Guardian, etc., Co.* v. *Quintana,* 227 U. S. 100; *Hill* v. *Farmers & M. Bank,* 97 U. S. 450; *Hoepner* v. *Bell,* 35 App. D. C. 534; *Ketchum* v. *Duncan,* 96 U. S. 659; *Laughlin* v. *Mitchell,* 121 U. S. 411; *Metropolitan R. R.* v. *District of Columbia,* 195 U. S. 322; *Morris* v. *Wheat,* 8 App. D. C. 379; *Mut. L. Ins. Co.* v. *Harris,* 97 U. S. 331; *McGoon* v. *Scales,* 9 Wall. 23; *Old Dominion Copper Co.* v. *Lewisohn,* 210 U. S. 206; *Railroad Co.* v. *Dubois,* 12 Wall. 47; *Roney* v. *U. S.* 43 App. D. C. 533; *Throckmorton* v. *Holt,* 180 U. S. 552; *Uttermehle* v. *Norment,* 22 App. D. C. 31; *Van Rensselaer* v. *Kearney,* 11 How. 297.

*Mr. John C. Gittings* for Rose Keeling Hutchins.

Mr. Justice Van Orsdel delivered the opinion of the Court:

Caveator offered as a witness Dr. Sowers, who had been the family physician of testator for thirty-seven years, and who,

with the exception of a few months in 1910 and 1911, attended testator up to the time of his death.    Objection to the testimony of this witness as to the mental condition of the testator was based upon sec. 1073 of the District Code, which provides as follows: "In the courts of the District of Columbia no physician or surgeon shall be permitted, without the consent of the person afflicted, or of his legal representatives, to disclose any information, confidential in its nature, which he shall have acquired in attending a patient in a professional capacity and which was necessary to enable him to act in that capacity."

This statute, in broad terms, renders a physician an incompetent witness in the District of Columbia to testify concerning confidential information acquired while attending a patient in his professional capacity.    To this sweeping rule there is a single exception.    Such testimony may be received with the consent of the patient or his legal representatives.    The exception is not in this case.    Hence, the proferred witness was confronted by the general prohibition of the statute.    The court permitted the witness to testify after cautioning him as follows:— "I may say to you, Doctor, that you must carefully avoid, in answering any of these questions, stating anything that Stilson Hutchins may have said to you, or anything that you may have learned by any examination that you made of him."    A colloquy followed between counsel and the court, which resulted in further caution from the court to the effect that the witness should discriminate between competent and incompetent facts and only testify to that which was not within the inhibition of the statute.

It is difficult for a physician who, as in this instance, acquired his knowledge from professional contact with his patient, under any circumstances to qualify as a witness within the statute to express an opinion as to the mental capacity of his patient to make a will.    Any opinion he may form, of necessity, must be affected, more or less, by knowledge of the physical and mental condition of the patient professionally acquired.    But, assuming that he might be able to form an opinion based upon facts independent of the forbidden sources, it is for the court,

and not the witness, to determine whether or not the facts upon which the conclusion or opinion is founded are within or without the limitations of the statute, and this can only be accomplished by a careful examination of the witness as to every fact contributing to his opinion. It was error to permit this witness to discriminate as to matters of fact in his own mind, and merely state his conclusion to the jury. Such an opinion emerges from the mental processes of the witness without judicial scrutiny of the facts upon which it is based.

The depositions of certain physicians were offered by caveatees, and objected to by counsel for caveator as incompetent under sec. 1073 of the Code [30 Stat. at L. 1358, chap. 854]. The trial justice, sustaining the objection, said: "During the taking of the caveator's testimony certain physicians who had attended the deceased were offered as witnesses. The caveatees, by their attorneys, then objected that a physician was prohibited from testifying, no matter what the nature of the illness may have been. This court sustained the caveatees' contention in that behalf and held that the statute prohibited a physician from testifying as to first, any communication made by the patient with reference to any ailment or disease, or supposed ailment or disease; or, second, any knowledge obtained by personal examination of such patient. This ruling became the law of the case, and the caveator was restricted under it in the presentation of his evidence. The court considers the previous ruling to be the law of this case, in view of the fact that the caveator was restricted by it; and, since such restriction was imposed at the instance and insistence of the caveatees, they are clearly estopped to question the correctness of the ruling as constituting the law of the case."

It is difficult to understand why the court permitted Dr. Sowers to testify to such matters as he might deem competent, and refuse to examine the depositions offered by the caveatees to ascertain whether or not they contained testimony which did not come within the inhibition of the statute. The inconsistent position thus assumed by the court was highly prejudicial to the caveatees. Portions, at least, of these depositions were

admissible, and it, therefore, was error to refuse to admit the testimony therein contained so far as it was competent. The contention, however, that the caveatees were the legal representatives of Stilson Hutchins, and, as such, could waive the restrictions of the statute as to the testimony of the physicians testifying in their behalf, is without merit. While, by virtue of their appointment as executors in the will, they could appear to defend it, they were not legal representatives within the purview of the statute.

We now approach a more difficult question. It is urged by counsel for caveatees that caveator is estopped by his own conduct to question the mental capacity of the testator. Caveator pitched his case upon the continued mental incompetency of testator from February 7, 1904, the date when he had a stroke of paralysis, until the date of his death in 1911. During this period, caveator conducted extensive business transactions with and on behalf of his father. During this time he took deeds to real estate from his father and assignments of stock in corporations, received extensive gifts in money and other things, and represented his father, both as attorney in fact and as his legal adviser in transactions involving directly and indirectly the entire estate of the testator. Caveator testifies that, when these transactions were made, he knew that his father was mentally incompetent to make a contract or to transact business, but that he accepted the conveyances and money and still insists upon his right to retain the property thus acquired.

The power of the caveatees to object to caveator's conduct, as affecting his right to caveat the will, presents no difficulty. It is true that the caveatees are only executors *eo nomine* until the probate of the will, and not in privity with the testator; but it must be remembered that Walter Hutchins appears on his own behalf. He is not only a beneficiary under the will here involved and all other wills of the testator, but an heir at law. Hence, if there be a will proved, he will be in privity with the testator by representation; but, will or no will, he is in privity by blood, and stands in that respect in equal relation with the caveator.

In a case of this sort, the courts do not stop to apply the technical rules of estoppel. Indeed, we are little concerned with their application, since the case falls within the rule forbidding a party to maintain an inconsistent position in judicial proceedings. It is not strictly a rule of estoppel, but partakes rather of a positive rule of procedure based upon the soundest principles of justice. Justice closes its eyes and courts close their doors against one who seeks to allege his own turpitude. Lee Hutchins is contesting this will alone. If he were associated with innocent parties possessing the legal right to caveat the will, objection might be limited to the competency or weight of his testimony; but here the whole case stands or falls upon the consistency of his position.

This wholesome rule of procedure has been the law of this jurisdiction almost from the organization of this court. It was applied in *Ohio Nat. Bank* v. *Hopkins,* 8 App. D. C. 146, and in *Downs* v. *Downs,* 23 App. D. C. 381, 388. In the latter case, Downs had registered as a voter and had voted in the State of Maryland. Subsequently he brought a suit for divorce, alleging his citizenship in this District. The trial court treated the issue as one of fact as to whether he had perjured himself in Maryland or was perjuring himself here; but this court, in closing the door against him and refusing him a hearing, said: "Reliance is placed on the case of *Thomas* v. *Warner,* 83 Md. 14, 34 Atl. 830, as establishing the conclusion that under such conditions as are manifested in the record before us the appellee would not have been admitted to the exercise of the right of suffrage in Maryland as not having acquired the required residence in that State; but the plain answer to this is that he has in fact been admitted to the exercise of the right of suffrage. Whether he has been so admitted through fraud and fraudulent representations on his part, or in consequence of a fair and honest showing that his true residence was in that State, can make no difference in this case. If it was through fraud and fraudulent representations that he procured himself to be regarded as a bona fide resident of the State of Maryland, he should not now be heard to establish his own infamy, although

such is the necessary conclusion to be drawn from the decision of the court below; but if, on the other hand, his presentation of his case to the board of registration in Maryland was fair and honest, his present allegation of residence in this District is devoid of any foundation in fact. In either case he must be held to have made his own record, and he must stand by it."

There, the only common subject-matter was the single issue of the citizenship of Downs. Here, the subject-matter is one,—the estate of Stilson Hutchins. If, as caveator now contends, the testator was mentally incompetent to make a valid contract between 1904 and the date of his death in 1911, the law required the conservation of his estate, after providing for his own needs and the needs of those dependent upon him during his lifetime, for the benefit of his heirs, two of whom are parties to this action. On the other hand, the law would not sanction the conduct of anyone, much less a son, trafficking in the estate and taking title to any part of it by deed, gift, or otherwise. If the testator, by reason of his mental condition, was legally disqualified to make contracts affecting his estate, all persons dealing with him were equally disqualified. In the present case, the caveator testifies that, during the time he was conducting these transactions, he was aware of his father's mental incapacity. Notwithstanding this, he now insists that the property thus acquired not only belongs to him, but that he intends to retain it. In view of this testimony, and applying by analogy the Downs Case, whether, when he procured the property from testator, testator was competent or incompetent, "can make no difference in this case." If, when he procured it, his father was capable of making a valid contract, then caveator is not in position to ask the court to cancel the will; if testator was incompetent and caveator acquired it with knowledge of this fact, "he should not now be heard to establish his own infamy." The course of conduct pursued by caveator, we think, is such that he has foreclosed himself from maintaining an action challenging the validity of the will based upon the mental incapacity of the testator. His position is so inconsistent that the

court will refuse to open its doors to him and permit him to sustain his present position by proof of his earlier fraud.

The judgment is reversed with costs, and the cause is remanded for further proceedings.

*Reversed and remanded.*

The CHIEF JUSTICE dissents.