416 A.2d 228 (1980)
In re ESTATE of Woodrow WILSON.
Johnnie WILSON et al., Appellants,
v.
William M. THORNTON et al., Appellees.
No. 79-40.
District of Columbia Court of Appeals.
Argued February 20, 1980.
Decided May 29, 1980.
*229 Charles C. Parsons, Washington, D.C., for appellants.
William M. Thornton, Washington, D.C., for appellees.
Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.
NEWMAN, Chief Judge:
Appellants, the decedent's heirs-at-law, contested his purported will on the basis that he lacked testamentary capacity at the time of the will's execution.[1] The trial court, relying on the physician-patient privilege, D.C. Code 1973, § 14-307(a), excluded medical evidence and testimony proffered by appellants, and directed a verdict for the appellees. The issue before us on appeal is whether the trial court erred in excluding the proffered evidence and testimony; more specifically, we must decide in the case of a will contest, who is to be considered the decedent's "legal representatives" for the purpose of waiving the physician-patient privilege.
In Part I of this opinion we set forth the pertinent facts and trial proceedings. In Part II, we discuss the existing case law on the issue before us in this jurisdiction. In Part III we analyze the appellants' contentions and conclude that the heirs-at-law are the "legal representatives" of the decedent for purposes of D.C. Code 1973, § 14-307(a). Finally, in Part IV we summarize our findings and conclusions. We reverse and remand for a new trial.

I
Woodrow Wilson, the decedent, entered the Veterans' Administration Hospital on May 4, 1977, suffering from cancer of the bladder. While there he received massive daily doses of dilaudid, a morphine derivative, to relieve his extensive and debilitating pain. On June 15, 1977, he executed a paper writing which purported to be his Last Will and Testament. William Thornton, the appellee, drafted the purported will in which he was named as decedent's executor. The will was witnessed by Thornton's law partner and by his secretary.
The will left everything to Wilson's uncle, Frederick Douglas Cannon, and to his cousin, Ernestine Stevenson; it made no mention of Wilson's heirs-at-law, namely, his estranged wife, his daughter Cynthia Chambers, and his granddaughter Yvonne Holmes (the child of his deceased daughter, Evelyn).[2]
Woodrow Wilson died on July 22, 1977 and shortly thereafter his nominated executor, William Thornton, offered the will for probate and applied for letters testamentary. Before Thornton was qualified as executor, the heirs-at-law filed a timely complaint to contest the validity of the will. Prior to trial, counsel for the heirs obtained the complete medical records of decedent's final hospitalization and had them reviewed by two physicians, who concluded that Wilson lacked testamentary capacity at the time of the alleged execution of the will. The heirs then filed a Memorandum of Law in support of their complaint and attached a copy of the decedent's medication charts, an affidavit signed by an expert in medicine and pharmocology, and waivers of the physician-patient privilege which each of the heirs had executed.
At trial, the executor  who was still eo nomine, not de jure  objected to the introduction of the hospital records and of the medical testimony, claiming that the heirs *230 did not have the right to waive the privilege established by D.C. Code 1973, § 14-307(a). The appellants/heirs produced evidence of Wilson's affection for his daughter and granddaughter, but the trial court ruled that only a qualified executor or administrator could waive the physician-patient privilege in a will contest. The court effectively held that, until letters testamentary have been issued, no one can claim to be the "legal representative" of the decedent, with the accompanying power to waive the privilege. The trial court grounded its conclusion on two previous opinions which the same judge had authored, neither of which has ever come before this court for review.[3] As a result of the court's ruling, all of the appellants' medical evidence was excluded and a verdict was directed in favor of the appellees. This appeal followed.

II
The issue before us is whether the heirsat-law of a deceased testator are his "legal representatives" for the purpose of waiving the physician-patient privilege, D.C. Code 1973, § 14-307(a), in a will contest between the heirs and the nominated executor, legatees, and devisees. D.C. Code 1973, § 14-307(a) states in pertinent part:
In the Federal courts in the District of Columbia and District of Columbia courts a physician or surgeon may not be permitted, without the consent of the person afflicted, or of his legal representative, to disclose any information, confidential in its nature, that he has acquired in attending a patient in a professional capacity and that was necessary to enable him to act in that capacity, whether the information was obtained from the patient or from his family or from the person or persons in charge of him. [Emphasis added.]
The legislative history of this statute and its predecessor statutes in the District of Columbia is totally devoid of reference to the congressional intent as to the meaning of the term "legal representative". The sole legislative history addresses the need to create by statute a physician-patient privilege for the District of Columbia. S. 981, 54th Cong., 1st Sess. (1896); H.R. 2647, 54th Cong., 1st Sess., 57 Cong.Rec. 289, 5012, 5068-71 (1896) (S. 981 adopted in place of H.R. 2647); S.Rep. No. 481, 54th Cong., 1st Sess. 1 (1896); H.R.Rep. No. 1677, 54th Cong., 1st Sess. (1896).
The United States Court of Appeals for the District of Columbia Circuit considered the issue before us in an early case, Hutchins v. Hutchins, 48 App.D.C. 495 (1919). In Hutchins, the decedent left a will naming his two sons, Walter and Lee, and one Charles L. Frailey, as executors. Lee Hutchins filed a complaint to contest the validity of the will and at trial attempted to introduce the testimony of the decedent's attending physician concerning decedent's mental capacity at the time of the execution of the purported will. Walter Hutchins and Charles Frailey, defending the will in their capacity as nominated executors, objected to the introduction of the testimony. The court ruled that:
This statute [predecessor to § 14-307], in broad terms, renders a physician an incompetent witness in the District of Columbia to testify concerning confidential information acquired while attending a patient in his professional capacity. To this sweeping rule there is a single exception. Such testimony may be received with the consent of the patient or his legal representatives. The exception is not in this case. [Id. at 500.]
It is clear that Lee Hutchins was challenging the will in his capacity as decedent's heirs-at-law, and not as decedent's nominated executor, for a nominated executor is under a duty to defend the purported will. Tuohy v. Hanlon, 18 App.D.C. 225 (1901). Therefore, the court can only be understood to have ruled that an heir is not a decedent's "legal representative" for the purpose of waiving the physician-patient privilege. Stanford v. American Security & *231 Trust Co., 60 App.D.C. 380, 55 F.2d 542 (1931), relied exclusively on Hutchins in reaching an identical result.
The Hutchins court failed to articulate any rationale for its holding that an heir is not the "legal representative" of the decedent for purposes of § 14-307, nor did it offer any citations or other authority in support of its assertion. Over the years, the rule in Hutchins has been called seriously into question.
First, it has now been clearly established that where the heirs stand in the patient's shoes and there is no controversy between the executor and the heirs, the united heirs are the patient's "legal representatives" and may exercise the privilege as against a stranger.[4]Calhoun v. Jacobs, 79 U.S.App.D.C. 29, 141 F.2d 729 (1944) (suit by grantor's heirs to set aside, on the ground of grantor's mental incapacity, a conveyance of real property to a stranger); Thomas v. Doyle, 88 U.S.App.D.C. 95, 187 F.2d 207 (1950) (adopted son of the decedent who sues stepfather on the grounds that stepfather, having still been married to his first wife at the time he purported to marry the decedent, committed fraud on the decedent, thereby causing her to convey her property to his as joint tenant, may waive the privilege as the "legal representative").
Second, the court in Calhoun v. Jacobs, supra at 30 n.5, 141 F.2d at 730 n.5, appeared to indicate that it would be willing to reexamine the question of the relative rights of heirs and a nominated executor in a controversy such as the one we have before us today. Furthermore, the court in Calhoun, supra at 29 & n.2, 141 F.2d at 729 & n.2, cited approvingly decisions from five jurisdictions that held that the heirs of a patient are "permitted to exercise the patient's privilege of waiver in order to enforce a substantive right which descended from the patient to his heirs." Id. at 29, 141 F.2d at 729 (footnote omitted).[5]
Third, the United States Court of Appeals for this Circuit specifically addressed the issue of the interpretation to be given the phrase "legal representative" in several cases, involving the Survival Act, D.C. Code 1973, § 12-101,[6] decided after Hutchins. Of *232 particular interest is the case of Thomas v. Doyle, supra, where the court, in holding that a broad definition of the term should be applied, stated that
The term "legal representative" does not possess a fixed and narrow meaning in the law. This court has construed its use in another section of the D.C. Code [present § 14-307], to encompass both executors or administrators and heirs where there is no controversy between them. That Congress did not intend to limit the right to bring an action under § 12-101 [the Survival Statute] only to executors or administrators is also shown by reference to the terminology used in the wrongful death statute, § 16-1202, where such a result was achieved by use of the more restrictive phrase "personal representative." The Supreme Court has recognized the different scope of the two terms in New York Mutual Life Ins. Co. v. Armstrong, 1886, 117 U.S. 591, 597, 6 S.Ct. 877, 879, 29 L.Ed. 997, . . . where the Court stated, ". . . The terms `legal representatives' is not necessarily restricted to the personal representatives of one deceased, but is sufficiently broad to cover all persons who, with respect to his property, stand in his place and represent his interests, whether transferred to them by his act or by operation of law." Reference to Words and Phrases also discloses the wide gamut of persons encompassed by the term, among the most common of which are `heirs', particularly when realty is involved. [Id. at 97-98, 187 F.2d 209-10 (citations omitted).][7] *233 See In re Estate of Goan, 83 Idaho 568, 366 P.2d 831 (1961); Industrial Commission of Ohio v. Warnke, 131 Ohio St. 140, 2 N.E.2d 248 (1936) (quoting 5 Wigmore on Evidence § 2391 at 226 (2d ed. 1923)); Martin v. Shaen, 22 Wash.2d 505, 156 P.2d 681 (1945); In re Thomas' Estate, 165 Wash. 42, 4 P.2d 837 (1931), aff'd on rehearing, 165 Wash. 42, 7 P.2d 1119 (1932) (en banc).
Fourth, on repeated occasions following the decision in Calhoun v. Jacobs, judges of the United States District Court for the District of Columbia have ruled that persons other than a duly qualified executor are entitled to waive the physician-patient privilege, thereby indicating their understanding that the rule in Hutchins v. Hutchins, is no longer viable law in this jurisdiction. See Estate of William Rosendorf, Admin. No. 974-69 (D.D.C. March 12, 1970) (McGuire, J.) (heirs-at-law could waive); Corzelius Estate, Admin. No. 108438 (D.D.C. Oct. 4, 1963) (Holtzoff, J.) (heirs could probably waive); Estate of Portia W. Marshburn, Admin. No. 524-72 (D.D.C. Jan. 5, 1973) (Gasch, J.) (collector could waive); In re Estate of Catherine Agnes Shea, Admin. No. 90,450 (D.D.C. Jan. 22, 1957) (McGuire, J.) (same); In re Estate of Henry D. Byers, Admin. No. 54,308 (D.D.C. 1939) (Laws, J.) (decided prior to Calhoun, held: collector could waive. Contra, Estate of Bertha Schwartz, Admin. No. 84,923 (D.D.C. Jan. 11, 1955) (Kirkland, J.) (collector could not waive).
Clearly, then, the blanket rule asserted in Hutchins has been seriously eroded by the later decisions in Thomas v. Doyle and Calhoun v. Jacobs, to the point where we may question whether, prior to our present decision, it even remained as good law.

III
The District of Columbia statute, providing for waiver of the physician-patient privilege by the patient or his legal representative, is unique among the various statutes in the nation's jurisdictions. The physician-patient privilege, unlike its common law counterpart, the attorney-client privilege, is purely a statutory creation. In re Estate of Goan, supra; 97 C.J.S., Witnesses § 293 (1957); Annot., 97 A.L.R.2d 393 (1964). Of the thirty-two states that provide for a physician-patient privilege at all,[8] thirteen of them make no provision for waiver of the privilege by anyone other than the patient.[9] Two states make no provision for waiver of the privilege by anyone at all.[10] Five states provide that, after the death of the patient, only his "personal representative" may waive the privilege.[11] Twelve *234 other states have widely differing versions of the privilege; those that specifically provide for waiver of the privilege by heirs or those parties interested in the preservation of the estate obviously will never face an issue analogous to the one presented in the case sub judice.[12]
Thus, no other jurisdiction has faced precisely the same problem of statutory interpretation as we are confronted with in delineating the meaning of the phrase "legal representative" in the context of the physician-patient privilege, for no other jurisdiction utilizes that term in its statute. However, we can derive a significant benefit from the logic of those cases from other jurisdictions where the issue currently before us has been addressed, though in differing statutory contexts.
In almost all instances the courts have understood that it would be utterly unreasonable to suggest that, on the one hand, the legislature had provided for a challenge to a purported will on the basis of the decedent's testamentary capacity at the time of the will's execution, yet on the other hand, had barred the introduction of perhaps the single most probative piece of evidence on that very issue: the testimony of the decedent's attending physician.[13] *235 The most common reasons given for interpreting such statutes as allowing a broad right of waiver, and thereby restricting the scope of the privilege, are that (1) the privilege tends to suppress truth, (2) the evidence which the patient has disclosed to the physician is in many instances nearly indispensable, and (3) the interests of those claiming under the decedent may be damaged irreparably without the evidence of the physician. Annot., 97 A.L.R.2d 393 at 396 n.4 (1964). See generally Chafee, Privileged Communications: Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand? 52 Yale L.J. 607 (1942).
Courts from other jurisdictions have also uniformly recognized that if there is to be a fair, well-informed adjudication as to decedent's testamentary capacity, the parties on both sides of a will contest must be allowed to waive the physician-patient privilege. Allowing one side the advantage of being able to choose to either introduce or withhold the physician's testimony would seriously call into question the validity of the outcome of the contest. See Annot., 97 A.L.R.2d 393 (1964).
We may also recognize the self-evident proposition that a far greater leap of judicial construction is required to interpret a statute, which on its face has an absolute bar to anyone but the patient waiving the privilege, as allowing after the patient's death waiver by any and all parties claiming through the decedent, than we are called on to make in the case sub judice. As we have seen, our own statute already provides for waiver by the patient's "legal representatives", and we are merely called on to interpret the meaning of that term. When the great weight of authority from other jurisdictions with more restrictive statutes than ours, allows heirs-at-law the right to waive, and when the court of this jurisdiction interpreting the term "legal representatives" in the context of the Survival Act, § 12-101, has previously included the heirs-at-law within its definition, we need stretch little, if at all, in order to hold that a decedent's heirs are his "legal representatives" for purposes of waiving the physician-patient privilege.
In the present case, appellees argue, and the trial court ruled, that under D.C. Code 1973, § 14-307, until an executor is qualified the decedent is without a "legal representative" entitled to waive the physician-patient privilege. The flaw in this argument is that the privilege could never be waived prior to the issuance of letters testamentary and the failure to waive could frequently prove to be the outcome determinative in a will contest. We must remember that the duty of the court is, first and foremost, to see that justice under law is done; in this instance, that requires that the trier-of-fact make as well-informed a judgment as possible about the validity of the will. To carry out its function, the trier-of-fact must be fully apprised as to the mental capacity of the testator at the time he made the will, and to do that it must have access to the best available evidence. In many, if not most, instances, the testimony of the attending physician will be highly probative of this issue. To deny his evidence to the trial court would be a disservice to both the deceased and to his estate. After all, if the testator "did not have testamentary capacity, then the paper was not his will, and it is not the policy of the law to maintain such an instrument." In re Thomas' Estate, supra at 59, 4 P.2d at 842-43, quoting Winters v. Winters, 102 Iowa 53, 58, 71 N.W. 184, 185 (1897). Furthermore, it would be incongruous to suggest that the legislature had placed a premium on determining the testamentary capacity of the decedent in adjudicating the validity of a purported will, D.C. Code 1973, § 18-102, yet at the same time had, by *236 provision of § 14-307, barred the introduction of the testimony of decedent's attending physician, perhaps the single most probative piece of evidence on that very issue, while at the same time allowing lay opinion testimony on the issue of testamentary capacity.[14] We cannot reasonably accept an interpretation of the statute so clearly antithetical to the purposes of the legislative scheme.[15]
We believe the best rule to be that, where there is a conflict between the heirs-at-law and the executor, either eo nomine or de jure, or where the heirs-at-law are on opposing sides of a will contest, any single one of the heirs, or the executor, eo nomine or de jure, should be entitled to waive the physician-patient privilege. As the court stated in In re Koenig's Estate, 247 Minn. 580, 588, 78 N.W.2d 364, 369 (1956), quoting McCormick, Evidence § 105:
In contests over the validity of a will, where both sides  the executor on the one hand and the heirs or next of kin on the other  claim under and not adversely to the decedent, the assumption should prevail that the decedent would desire that the validity of his will should be determined in the fullest light of the facts.
The physician-patient privilege is "for the benefit of the patient while living and of his estate when dead." In re Thomas' Estate, supra at 59, 4 P.2d at 842-43, quoting Winters v. Winters, supra, at 58, 71 N.W. at 185. One of the major purposes of the statutory privilege is to prevent disclosure of information concerning the patient's ailments which might result in his humiliation, embarrassment, or disgrace. 97 C.J.S. Witnesses, supra, § 293, at 824-26 n.98. Secondly, the statute also seeks to promote greater freedom in communications between physician and patient with regard to matters touching on the disease of the patient by covering their relationship with a cloak of confidence. Id. Once the patient has passed away, however, the privilege continues to exist for the benefit of his estate. It is clearly in the interest of both the estate and the deceased himself that the truth as to the validity of the will be ascertained. In re Thomas' Estate, supra at 59, 4 P.2d at 842, quoting Winters v. Winters, supra at 58, 71 N.W. at 185.
[I]t would close an important avenue for the judicial ascertainment of the truth to push that statutory privilege so far as to exclude the physician's testimony when the executor objects to its admission, although the heirs, his nearest blood kindred, were ready to waive it. The disclosure of intimate facts pertaining to the patient's physical or mental condition might adversely affect the sensibilities of his heirs, but it is hardly conceivable that the personal feelings of his executor or administrator could be thus affected. . . . So far as concerns the testamentary capacity of a testator, however, the exclusion of the testimony of the physician would not avail to keep that question out of the lawsuit. Anybody and everybody, except the physician, who has an opinion on such a question based on more or less significant and pertinent facts, may give testimony on the point. *237 [Gorman v. Hickey, 145 Kan. 54, 62, 64 P.2d 587, 592 (1932) (citations omitted).]
After the patient has died, it is of paramount importance that both his property interests, as well as his reputation and memory, be protected. In this regard, an heir should have the power to waive the privilege, "if we remember that the heir, first, is at least equally interested in preserving the ancestor's reputation [as the executor, legatee, or devisee], and secondly, has an equal moral claim to protect the deceased's property-rights from unwarranted diminution." Industrial Commission of Ohio v. Warnke, supra at 146, 2 N.E.2d at 251, quoting 5 Wigmore on Evidence § 2391, at 226 (2d ed. 1923). The heirs are all interested in the protection of the estate and therefore are accorded the right of waiver upon the presumption that they would only consent to the waiver for the purpose of securing that end. Industrial Commission of Ohio v. Warnke, supra at 146, 2 N.E.2d at 250. By claiming under the decedent, the heirs are not adverse to his interests or to the interests of his estate, In re Koenig's Estate, supra; Thompson v. Ish, 99 Mo. 160, 12 S.W. 510 (1889); Lembke v. Unke, 171 N.W.2d 837, 847 (N.D. 1969); In re Thomas' Estate, supra. Contra, In re Cottrill's Estate, 39 F.Supp. 689, 691 (D.D.C. 1941); Towles v. McCurdy, 163 Ind. 12, 71 N.E. 129 (1904) (heirs or devisees cannot waive when they are attacking the validity of the will); Re Mansbach's Estate, 150 Mich. 348, 114 N.W. 65 (1907) (decided under earlier Michigan statute not providing for waiver by heirs), for any and all rights the heirs may possess stem from the fact that, as the testator's spouse or blood kindred, they stand in the testator's shoes.
Furthermore, it is almost universally conceded that all parties concerned need not unite before the privilege may be waived, and that any one of those entitled to waive the privilege may do so without the consent of the others. Annot., 97 A.L.R.2d 393, 418 n.8. See In re Estate of Goan, supra (unanimity of heirs not required for waiver); Winters v. Winters, supra (same); Gorman v. Hickey, supra (divided heirs could probably waive); Bruington v. Wagoner, 100 Kan. 10, 164 P. 1057 (1917) (same); Oldenberg v. Lieberg, 177 Mich. 150, 142 N.W. 1076 (1913); In re Koenig's Estate, supra (rule should be that there need not be unanimity among the heirs before there can be a waiver); Thompson v. Ish, supra; In re Cleveland's Will, 273 App.Div. 623, 78 N.Y. S.2d 897, (1948) (any one of the parties entitled to waive may do so individually). Requiring unanimity among the heirs-at-law would only serve to keep highly probative evidence from the court in cases where the heirs are themselves on opposite sides of the dispute. In light of the paramount interest of the decedent in having the truth ascertained as to the validity of the contested will, "it is only reasonable that anyone claiming through the decedent, personal representative, or some, but not all, of the heirs, may waive this privilege. 8 Wigmore Evidence (McNaughton, Rev. 1961) § 2391, p. 865." In re Estate of Goan, supra at 568, 366 P.2d at 835.

IV
In conclusion, therefore, we hold that the heirs-at-law either jointly or individually, as well as the executor eo nomine or de jure, are the "legal representatives" of the decedent for purposes of D.C. Code 1973, § 14-307. The trial court erred in ruling that appellants, the heirs-at-law, were not entitled to waive the physician-patient privilege in a dispute with the nominated executor.
Reversed and remanded for trial.[16]
NOTES
[1] The matter was tried by a jury.
[2] Appellant Johnnie Wilson, as decedent's widow, is entitled to her statutory share of his estate, D.C. Code 1973, §§ 19-113, -303, regardless of the outcome of the suit. A favorable determination would not alter the share of the estate to which she is entitled. However, if decedent died intestate, as would be the case here if the proffered will is invalid (no prior will(s) have been filed as is required by law if they exist. Doherty v. Fairall, 134 U.S.App. D.C. 107, 413 F.2d 381 (1969)), Johnnie Wilson, as decedent's surviving spouse, would have statutory priority to serve as Administratrix. D. C. Code 1973, § 20-334. This is sufficient to give her standing to contest the will. Likewise, both Cynthia Chambers and Yvonne Holmes as heirs-at-law and next of kin are proper parties in this case.
[3] See Estate of Sadie Milestone, Admn. No. 1199-77 (Super.Ct. D.C. August 2, 1978); Tolson v. Mohr, Admn. No. 868-75 (Super.Ct. D.C. March 26, 1976).
[4] We note that in this jurisdiction an executor who is still eo nomine has been held not to be the decedent's "legal representative," and so lacks the power to waive the privilege. McCartney v. Holmquist, 70 App.D.C. 334, 106 F.2d 855 (1939). See also Labofish v. Berman, 60 App.D.C. 397, 55 F.2d 1022 (1932); Hutchins v. Hutchins, supra. However, an executor de jure is the decedent's "legal representative" and is entitled to waive the privilege. Calhoun v. Jacobs, supra; Thompson v. Smith, 70 App. D.C. 65, 103 F.2d 936 (1939).
[5] Schornick v. Schornick, 25 Ariz. 563, 220 P. 397 (1923) (in suit by decedent's son to set aside a deed executed by decedent, held: both heirs-at-law and personal representatives may waive the privilege); Flack v. Brewster, 107 Kan. 63, 190 P. 616 (1920) (in suit by decedent's brothers, as heirs-at-law, against his sister, as grantee, to cancel a deed of conveyance, held: legal representatives and those interested in the preservation of the estate, including heirs-at-law, may waive); Gorman v. Hickey, 145 Kan. 54, 64 P.2d 587 (1937) (in will contest between heirs and nominated executor, held: the heirs to waive); Sprouse v. Magee, 46 Idaho 622, 269 P. 993 (1928) (in wrongful death action, held: heirs stand in a representative capacity and may waive); In re Thomas' Estate, 165 Wash. 42, 4 P.2d 837 (1931), aff'd on rehearing, 165 Wash. 42, 7 P.2d 1119 (1932) (en banc) (in will contest between heir on one hand and nominated executor and devisees on the other, held: heir may waive). All of these cases were decided under statutes more restrictive than the one with which we must deal, for none of them made provision for waiver of the privilege, after the patient's death, by anyone. It should be further noted that two of the cases cited with approval in Calhoun v. Jacobs, i. e., Gorman v. Hickey and In re Thomas' Estate, presented legal questions substantially identical to the one we must resolve in the case sub judice.
[6] D.C. Code 1973, § 16-2702, limits the right to bring an action for wrongful death to the decedent's "personal representative". This term has been strictly construed to encompass the decedent's executor or administrator, to the exclusion of all other persons. Harris v. Embrey, 70 App.D.C. 232, 105 F.2d 111 (1939) (appellant, decedent's mother, held not to be personal representative within meaning of the statute); Fleming v. Capital Traction Co., 40 App.D.C. 489 (1913); Ferguson v. Washington and G.R. Co., 6 App.D.C. 525 (1895) (husband held not to be personal representative of deceased wife); Mackey v. Baltimore and Potomac R.R. Co., 8 Mackey 282, 19 D.C. 282, aff'd, 157 U.S. 72, 15 S.Ct. 491, 39 L.Ed. 624 (1895).

By comparison, D.C. Code 1973, § 12-101, the Survival Statute, limits the right to bring an action on decedent's behalf to his "legal representative." This latter term has been given a broader construction than its counterpart in the Wrongful Death Statute. In Thomas v. Doyle, supra, as we have seen, the stepson of the decedent, his mother, was held to be her "legal representative" for purposes of using his stepfather to set aside a conveyance made by the decedent to the stepfather. In Emmett v. Eastern Dispensary, 130 U.S.App.D.C. 50, 396 F.2d 931 (1961), the court ruled that the duly qualified personal representative of the decedent was his legal representative for purposes of gathering information with a view to the possible prosecution of a wrongful death action. The court went on to rule, however, that where there was no duly qualified personal representative, the decedent's son, being so very closely identified with any cause of action arising from his father's negligently caused demise, qualified as a legal representative under § 12-101, at least for the purpose of gathering medical information.
Finally, in the recent case of Strother v. District of Columbia, D.C.App., 372 A.2d 1291 (1977), the court rejected the contention that the term "legal representative" is synonymous with the term "personal representative" for purposes of the Survival Act, stating that
[A] legal representative under the Survival Act may be any person who, whether by virtue of testamentary act or operation of law, stands in the place of the decedent with respect to his property, and . . . Congress did not intend to restrict the right to bring a survival action to duly appointed personal representatives, i. e., executors or administrators. Hence, as an heir-at-law, [decedent's son] was a proper party to sue on the Survival Act claim at the time of the filing of the original complaint, although he had not then been qualified as administrator of his father's estate. [Id. at 1295-96 (footnotes omitted) (explicating Thomas v. Doyle, supra).]
Strother and Emmett clearly establish that the narrower term "personal representative" is subsumed within the broader term, "legal representative".
[7] While Thomas v. Doyle suggests that a broad definition of "legal representatives" should be applied, Thompson v. Smith, supra, decided prior to Thomas v. Doyle, suggested that the phrase should be narrowly construed. In Thompson, the court said that the statute, the predecessor of § 14-307, was "not lacking in clarity", and that "[t]he phrase `legal representatives' has an accepted meaning which includes `executor'." Id. at 67, 103 F.2d at 938. (In Thompson, letters testamentary had already been issued to the executor. The court's comment as to the clarity of the statute clearly referred to the issue of whether an executor de jure was entitled to waive the privilege). While the Thompson court only said that an executor de jure was "a," and not "the exclusive," legal representative of the decedent, it did go on to quote Briggs v. Walker, 171 U.S. 466, 471, 19 S.Ct. 1, 3, 43 L.Ed. 243 (1898), to the effect that

The primary and ordinary meaning of the words `representatives', or `legal representatives', or `personal representatives', when there is nothing in the context to control their meaning, is `executors or administrators', they being the representatives constituted by the proper court. [Thompson v. Smith, supra at 67, 103 F.2d at 938.]
Briggs v. Walker was a suit between an executor de jure and creditors of the estate; in this action, an Act of Congress makes clear that here, where there is no controversy between the heirs and the executor, the executor properly stands in the shoes of the decedent as his estate's "legal representative". The Act was specifically passed for the benefit of the estate, not for the next of kin. It should be emphasized that the Supreme Court only said that the primary, not the exclusive, meaning of "legal representatives" is "executor".
[8] Eighteen states make no provision for a physician-patient privilege. These states are: Alabama, Alaska, Connecticut, Delaware, Florida, Georgia, Illinois, Maine, Maryland, Massachusetts, New Hampshire, New Mexico, Rhode Island, South Carolina, Tennessee, Texas, Vermont and West Virginia.
[9] Ariz. Rev. Stat. Ann. §§ 12-2235, 13-1802 (Supps. 1973 & 1976) (conservator or guardian may also waive); Ark. Stat. Ann. § 28-607 (1962); Colo. Rev. Stat. § 13-90-107 (Supp. 1979) (physician may also waive privilege if he is being sued by the heirs or the estate of patient); Ky. Rev. Stat. Ann. § 213.200 (Baldwin) (1969); La. Rev. Stat. § 15:476 (1950); Minn. Stat. Ann. § 595.02 (West) (Supp. 1979) (with exception of suit for insurance benefits after patient's death); Mont. Rev. Codes Ann. § 93-701-4 (1964). Or. Rev. Stat. § 44.040 (1975); Pa. Cons. Stat. Ann. § 42-5929 (Purdon) (1979); S.D. Comp. Laws Ann. § 19-2-3 (Supp. 1975) (deemed waived for purposes of discovery if patient's mental or physical health in issue); Utah Code Ann. § 78-24-8 (1953); Wash. Rev. Code § 5.60.060 (1956); Wyo. Stat. § 1-139 (1957).
[10] Ind. Code Ann. § 34-1-14-5 (Burns) (1973); Mo. Rev. Stat. § 491.060 (1978).
[11] Kan. Stat. Ann. § 60-427 (Supp. 1975) (but no privilege exists if the condition of the patient is brought into question by a person claiming or defending under or through the patient); Neb. Rev. Stat. § 25-1207 (Cum. Supp. 1969); Nev. Rev. Stat. § 49.235 (1977); N.D. Ev. R. 503 (Supp. 1979) (however, where patient's sanity or capacity is in issue, no privilege exists at all); Wis. Stat. Ann. § 905.04 (West) (1975).
[12] Cal. Evid. Code § 1000 (West) (1966) (no privilege exists where all parties to the action claim through the deceased patient); Hawaii Rev. Stat. § 621-20.5 (Supp. 1975) (no one may waive except the patient, but privilege deemed waived in any suit for personal injury or where the sanity of the patient is in question); Idaho Code § 9-203 (Supp. 1975) (physician may testify in several situations, including in contest over validity of will); Iowa Code Ann. § 622.10 (1971) (only patient may waive, but no privilege exists in wrongful death or personal injury actions where condition of the patient is element of the claim or defense); Mich. Stat. Ann. § 600.2157 (1976) (after patient dies, in contest over validity of will, heirs will be considered the "personal representatives" of decedent for purpose of waiving); Miss. Code Ann. § 13-1-21 (Supp. 1976) (in will contest the heirs, personal representative, or any proponent or contestant may waive); N.J. Stat. Ann. § 2A:84A-22.2 (West) (1976) (archaic waiver provision language; no use of terms "legal representative" or "personal representative" in statute); N.Y. Civ. Prac. Law § 4504 (McKinney) (Supp. 1979) (in will contest any interested party may waive); N.C. Gen. Stat. § 8-53 (Cum. Supp. 1979) (no one may waive except executor or administrator, but court may compel disclosure to ensure proper administration of justice); Ohio Rev. Code Ann. § 2317.02 (Page) (Supp. 1979) (if patient is deceased, waiver by express consent of surviving spouse, executor, or administrator); Okla. Stat. Ann. 12 § 385 (West) (1960) (no one may waive, but if patient himself takes stand, he is said to have thereby waived the privilege); Va. Code § 8.01-399 (1977) (where physical or mental condition of patient is at issue, or court deems it in the interest of justice, no privilege exists).
[13] great weight of authority in those jurisdictions in which the statute does not expressly extend the patient's right of waiver of the physician-patient privilege to anyone after his death is that the right to waive extends after the death of the patient to those who are to be regarded as representing, or standing in the place of the deceased.
* * * * * *
The heirs, legatees, or next of kin of the patient may usually waive the physician-patient privilege although the statute conferring the privilege contains no provision for waiver by anyone after the death of the patient. The rule has been applied in cases involving various types of litigation, such as will contests or suits to set aside allegedly invalid conveyances made by the patient. [Annot., 97 A.L. R.2d 393, 396 (1964) (footnotes omitted).]
Annot., 97 A.L.R.2d 393 at 408, § 8 refers to citations from thirteen states in support of this proposition. In particular, see Schomick v. Schornick, supra; Hyatt v. Wroten, 184 Ark. 847, 43 S.W.2d 726 (1931) (in will contest, testimony of testator's physicians held competent where physicians did not themselves claim privilege and heirs specifically waived it by putting them on the stand); In re Shapter, 35 Colo. 578, 85 P. 688 (1906) (where heirs filed caveat to will, legatees could waive); Sprouse v. Magee, supra; Stayner v. Nye, 227 Ind. 231, 85 N.E.2d 496 (1949) (in suit by heirs to set aside deed from decedent to a stranger to the estate, held: heirs or personal representative could waive); Winters v. Winters, 102 Iowa 53, 71 N.W. 184 (1897) (in will contest between devisees and heirs, either may waive); Flack v. Brewster, supra; Gorman v. Hickey, supra; In re Koenig's Estate, 247 Minn. 580, 78 N.W.2d 364, 368 (1956) (in will contest, both heirs and executor eo nomine may waive); Thompson v. Ish, 99 Mo. 160, 12 S.W. 510 (1889) (in will contest between devisees and heirs, either may waive); In re Porter's Estate, 208 Okl. 475, 257 P.2d 517 (1953) (same); In re Thomas' Estate, supra. Contra Watkins v. Watkins, 142 Miss. 210, 106 So. 753 (1929) (ruling, under earlier Miss. statute, that widow, as heir-at-law and personal representative of decedent, could not waive); McCaw v. Turner, 126 Miss. 260, 88 So. 705 (1921) (ruling, under earlier Miss. statute expressly providing for waiver only by patient, that heirs could not waive in suit to set will aside); Parisky v. Pierstorff, 63 Ohio App. 503, 27 N.E.2d 254 (1939) (ruling, under earlier Ohio statute, that privilege to waive does not survive death of patient and does not pass to his administrator); see Annot., 97 A.L.R.2d 393, at 399-403 (1964).
[14] Such lay opinion testimony is admissible. Turner v. American Security & Trust Co., 213 U.S. 257, 29 S.Ct. 420, 53 L.Ed. 788 (1909) (affirming the decision of the Court of Appeals for the District of Columbia reported at 29 App.D.C. 460 (1907)).
[15] While this court has not previously had occasion to address the issue, we note the absurd result that would occur if the patient's heirs or next of kin could not waive the physician-patient privilege in the context of a hearing on the need to appoint a conservator, held pursuant to D.C. Code 1973, §§ 21-1501 and -1502. If the patient himself did not waive the privilege, either because he refused to or because he was incompetent or unable to make such a decision, and his heirs or next of kin were not considered to be his "legal representatives" and so empowered to waive it, or if the guardian ad litem is not to be deemed to be a "legal representative" within the meaning of this statute, the court would be deprived of the most important evidence of the patient's "present inability to manage property by reason of mental weakness." In re Kloman, D.C.App., 315 A.2d 830, 832 (1974). Without such information, the court would frequently lack the capacity to make a fair, well-informed judgment as to the need for a conservator.
[16] The division recognizes that its disposition of this issue is contrary to prior precedent which we no longer consider to be persuasive. In cognizance of our obligations under M.A.P. v. Ryan, D.C.App., 285 A.2d 310 (1971), we have called the attention of each active member of the full court to the change we effect. Each such judge has made a determination not to call sua sponte for an en banc vote on the issue. Our statement of these facts is for informational purposes only, and is not intended to limit the right of either party to seek rehearing or rehearing en banc in this case.